FILED

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2011 FEB -7 P 4: 46

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE | ) | CLERK US DISTRICT COURT |
| §2703(d) ORDER RELATING TO | ) | MISC. NO. 10GJ3793 ANDRIA. VIRGINIA |
| TWITTER ACCOUNTS: | ) | No. 1:11DM3 (Judge Buchanan) |
| WIKILEAKS; ROP_G; IOERROR; | ) |  |
| AND BIRGITTAJ | ) | Hearing:  February 15, 2011 |
|  | ) | 10:30 a.m. |
|  | ) |  |
|  | ) | **UNDER SEAL** |

## GOVERNMENT'S RESPONSE IN OPPOSITION TO THE REAL PARTIES' IN INTEREST MOTION FOR UNSEALING OF SEALED COURT RECORDS

The United States of America, by and through its under-signed counsel, hereby opposes

the motion to unseal. The Parties in Interest (hereinafter the "subscribers") seek to unseal court

documents so that they may identify witnesses in an ongoing criminal investigation and publicly

air the contents of a grand jury investigation. Such a request is preposterous. If an individual

involved in any other criminal case petitioned a court to unseal materials that identified witnesses

or potential witnesses, for the purpose of subjecting the witness to public scrutiny regarding their

cooperation with law enforcement, *see* Mot. of Real Parties In Interest for Unsealing of Sealed

Court Records ("Mot. for Unsealing") at 3, that individual would be laughed out of court. The

sealed materials requested by the subscribers include information about a criminal investigation

that is protected from disclosure by an Order of this Court and sound public policy. Those

materials are properly sealed, and should remain so until the investigation concludes. Thus, the

subscribers' motion to unseal should be denied.

I. BACKGROUND

On December 14, 2010, this Court entered an Order pursuant to Title 18, United States

1

22

Code Section 2703(d), directing Twitter, Inc. to disclose certain non-content records that were relevant and material to an ongoing criminal investigation. In the December 14, 2010 Order, the Court found that disclosure of the application or the Order to any person would seriously jeopardize an ongoing criminal investigation. The Court ordered that the application and Order be sealed until further Order of the Court. On January 5, 2011, the Court unsealed the December 14, 2010 Order and authorized Twitter, Inc. to disclose the Order to its subscribers and customers. The January 5, 2011, Order stated that "in all other respects," the Court's December 14, 2010, Order remained in effect. After the Order was unsealed, it was released by unknown persons to the media. Intense public scrutiny of the investigation resulted, including calls by one subject of the Order and various media outlets for potential government witnesses to identify themselves. *See, e.g.*, Peter Beaumont, "Wikileaks demands Google and Facebook unseal US subpoenas," *The Guardian*, January 8, 2011, *available at* http://www.guardian.co.uk/media/2011/jan/08/wikileaks-calls-google-facebook-us-subpoenas.

II. ARGUMENT

A. The Subscribers Lack Standing to Move to Unseal Unspecified Other Orders and Pleadings, and Cannot Manufacture One By Claiming an Otherwise Nonexistent Right to Notice.

It should be obvious that a subject of a criminal investigation has no right to be made aware of subpoenas or other orders that have been issued to gather evidence regarding potential criminal conduct. Here, however, subscribers demand exactly that. They request that the Court unseal any judicial order "requiring entities other than Twitter to provide information concerning [the subscribers'] electronic communications and publications." (Mot. for Unsealing at 1.) However, the subject of an investigation lacks standing to contest orders directed at third party

2

witnesses. *In re Swearingen Aviation Corp.*, 605 F.2d 125, 127 (4th Cir. 1979).

In *Swearingen*, the plaintiff sought to vacate *ex parte* orders that were entered in relation to an ongoing criminal investigation. 605 F.2d at 126. The orders prohibited financial institutions that had received grand jury subpoenas from informing the plaintiffs whether they had been subpoenaed and what records they had produced. *Id.* The Fourth Circuit held that the plaintiffs lacked standing because they could not demonstrate an injury in fact or that they were within the class of persons that the secrecy rule, there Federal Rule of Criminal Procedure 6(e), was designed to protect. *Id.* Here, the subscribers cannot demonstrate an injury from the sealing orders on any sealed records.

Initially, the subscribers have not identified an injury from any other sealing order. Indeed, they cannot, because the existence of any other order is pure speculation on their part. Even if such orders do exist, however, there is no injury to the subscribers. An order directing a third party not to reveal a court order to the subject of an investigation does not create an injury-in-fact to the subject of the investigation. As the Fourth Circuit noted in *Swearingen*:

> A grand jury proceeding is not an adversary one. While witnesses who appear and testify before a grand jury may wish to communicate the fact of their appearance and their testimony to the person who is the subject of the investigation, such communication is entirely optional with the witness. The person who is the subject of the investigation has no right to require a witness to divulge such information. Thus, we perceive no rights of Swearingen or Fairchild which are violated even if we assume that the district court's orders are in violation of Rule 6(e).

605 F.2d at 127.

The subscribers seek to elide their lack of injury from a sealing order directed at a third party by simply asking the Court first to seek out other sealing orders which they may wish to

3

challenge, and next to vacate them. The subscribers allege this work is necessary so that they can assert substantive challenges to the underlying orders, if they exist. However, even if the subscribers' substantive challenge to the December 14, 2010 Order had merit, which it does not, there is no corresponding right to notice of other process that has been issued. *See S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 750 (1984) (rejecting right to notice of subpoena directed at third party by target of investigation even though it would "[prevent] some persons under investigation . . . from asserting objections to subpoenas . . . ."); *Swearingen*, 605 F.2d at 127 (holding target of grand jury investigation has no right to know whether third party has provided evidence against him or her); *United States v. Clem*, 210 F.3d 373, 2000 WL 353508, at *5 (6th Cir. Mar. 31, 2000) ("[Defendant] invites us to extend this logic to a constitutional right to receive notice of grand jury proceedings where a client may wish to assert his [right to quash]. But Clem cites no cases endorsing such a right, nor does our research reveal any.").

The cases cited by the subscribers regarding quashing a subpoena to a third party are inapposite. (Parties' Mot. For Unsealing at 13-14.) Those cases stand for the proposition that an organization may sometimes have standing to challenge a third-party subpoena that would reveal its membership. Here, none of the subscribers is an organization, and none of the subscribers seeks to vindicate the rights of non-parties to the litigation. Thus, there is no reason why these cases would override the specific holding in *Swearingen*. Additionally, none of those cases held that an organization has a right to notice of subpoenas or Orders that had been issued, and this Court should decline the subscribers' invitation to create one.

      B. The Records in This 2703(d) Matter Were Properly Sealed and Are Properly Maintained Under Seal Until After the Investigation is Concluded.

4

The subscribers do not dispute that the sealed records are part of an ongoing criminal investigation. As noted in the government's Response in Opposition to the subscribers' Motion for Immediate Unsealing of Motions and Upcoming Hearing ("Gov't Opp. to Mot. For Immediate Unsealing"), the proceedings related to the Court's December 14, 2010 Order are properly sealed. The subscribers also seek to unseal any other orders or records related to them. Those records, to the extent they exist, are also properly sealed. To seal a judicial record, the sealing must be "essential to preserve higher values and is narrowly tailored to serve that interest." *See Baltimore Sun*, 886 F.2d at 66-67.

"Fair and effective law enforcement . . . is a fundamental function of government." *See Branzburg v. Hayes*, 408 U.S. 665, 690 (1972). The secrecy of investigations is important for a number of reasons, *see* Gov't Opp. To Mot. For Immediate Unsealing at 3-5, but "[o]ne important reason for this desire to maintain secrecy is to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes." *United States v. Penrod*, 609 F.2d 1092, 1096 (4th Cir. 1979) (internal quotations and citations omitted). The subscribers' request would identify other witnesses, if any, who the government or the grand jury had requested to provide evidence. The chilling effect on potential witnesses of such a disclosure would undermine a fundamental government interest. *See In re Grand Jury Investigation of Cuisinarts, Inc.*, 665 F.2d 24, 27-28 (2d Cir. 1981) (noting prevention of influence on potential witnesses is fundamental justification for secrecy of investigations); *see also see In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1305 (4th Cir. 1987) (Wilkinson, J., concurring) (noting issuance of process serves society's compelling interest in law enforcement). Prior to entering the Order, the Court reviewed the application. Both Local

5

Rule 49 and section 2705(b) require that a request for a sealing order state the basis for why

sealing is necessary. The government did so, and the Court's Order specifically found that

disclosure of the application would jeopardize an ongoing criminal investigation. No further

procedure is required. *See Media Gen. Operations, Inc. v. Buchanan*, 417 F.3d 424, 430 (4th

Cir. 2005).

   Sealing until the investigation concludes is also narrowly tailored to serve that interest.

The subscribers state that document-by-document redaction and review would better protect their

interests. To the extent the subscribers seek information regarding the general format of requests

for 2703(d) orders, such information is already publicly available on the Department of Justice's

website. *See* http://www.justice.gov/criminal/cybercrime/ssmanual/ 06ssma.html. What the

subscribers actually seek is the factual information within the order. As the Court has already

found, however, the release of that information would jeopardize an ongoing investigation.

When the investigation concludes, the need for sealing will be significantly reduced. The

government will move for unsealing at that time.

   The subscribers' primary argument in favor of unsealing is not a legal argument. Their

primary argument is that continued sealing of records related to the subscribers is no longer

necessary because any damage that could occur to the investigation from unsealing those records

has already occurred from the unsealing of this Court's December 14, 2010 Order. However, the

unsealing of the December 14, 2010 Order, revealed very little about the investigation. It did not

reveal the targets of the investigation. It did not reveal the identities of potential government

witnesses, other than Twitter, Inc. It did not reveal any other facts or information already

gathered in the course of the investigation, any other information the government seeks, or the

reasons the information was sought. It did not reveal the "specific and articulable facts" from the

investigation that supported the Court's finding that the records subject to the Order were

relevant and material to an ongoing criminal investigation, or the specific facts that justified

filing the nondisclosure order. *See* 18 U.S.C. § 2705(b). All of this information concerns

subjects the subscribers seek to publicly litigate, and all of this information has been the subject

of intense public and media speculation. Such publicity can intimidate or deter witnesses from

coming forward, result in witness collusion, or lead to intimidation of grand jury members. *See*

*Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 218 (1979). Such improper influences

undermine the integrity and independence of the criminal justice system. *See Times Mirror Co.*

*v. United States*, 873 F.2d 1210, 1213 (9th Cir. 1989).

Subscribers have not cited a single case that suggests pre-indictment investigative

documents should be unsealed in the midst of the investigation. The only case cited by the

subscribers that relates to sealing at all discusses the unsealing of sentencing records, where the

information in the records was made public in the course of a criminal trial, as well as at a public

sentencing hearing. *See United States v. James*, 663 F. Supp. 2d 1018, 1021 (W.D. Wash. 2009).

That is not the case here, where no charges have been filed and an investigation is ongoing.

"[L]aw enforcement agencies must be able to investigate crime without the details of the

investigation being released to the public in a manner that compromises the investigation." *Va.*

*Dept. of State Police v. Washington Post*, 386 F.3d 567, 574 (4th Cir. 2004).

> C. There Is No First Amendment or Common Law Right To Access Sealed
> <u>Investigative Materials While an Investigation is Pending.</u>

There is no First Amendment right of access to either § 2703(d) orders or the affidavits

7

filed in support of them.  Neither the Fourth Circuit or the Supreme Court has ever held that there

is a First Amendment right of access to investigative documents or proceedings prior to the filing

of criminal charges.  For a First Amendment right of access to a record to exist, (1) the place or

process must have been historically open to the press and public, and (2) public access must play

a significant positive role in the particular process.  *See Baltimore Sun v. Goetz*, 886 F.2d 60, 63-

64 (4th Cir. 1989).  There is nor right to access § 2703(d) orders, as neither necessary factor is

met.

There is no history of openness in § 2703(d) proceedings.  Section 2703(d) applications

are traditionally submitted *ex parte* and *in camera*.  In addition, the statute specifically authorizes

the government to obtain an order denying notice to anyone, including the public, about the

existence of a § 2703(d) order and application that does not seek the content of any

communications.  *See* 18 U.S.C. § 2705(b).  These factors alone are sufficient to defeat the

subscribers' First Amendment challenge.  *See Baltimore Sun*, 886 F.2d at 63; *see also In re*

*Application of the N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401,

410 (2d Cir. 2009) (holding no First Amendment right of access to wiretap materials where

applications were created by statute and statute also had protective scheme); *In re Motions of*

*Dow Jones & Co.*, 142 F.3d 496, 502-03 (D.C. Cir. 1998) (holding no First Amendment right to

access proceedings that are ancillary to a grand jury investigation because they lack a tradition of

openness).

However, the subscribers also fail the second portion of the test.  Investigations are secret

for a reason - because secrecy is necessary to protect the investigative process.  *In re Macon*

*Telegraph Pub. Co.*, 900 F. Supp. 489, 492 (M.D. Ga. 1995) ("The very nature of . . .

8

investigative proceedings . . . is secretive. . . . The court refuses to find the existence of a right

that would in some circumstances possibly destroy institutions (such as the grand jury and

warrant issuance processes) so valuable and necessary to society."). Applications for § 2703(d)

orders should be kept secret for the same reason search warrant affidavits are kept secret. They

identify witnesses, reveal targets of the investigation, and could allow subjects of the

investigation to frustrate the aims of the order by destroying evidence. *See Baltimore Sun*, 664

F.2d at 64.

The subscribers identify no way in which openness furthers the § 2703(d) process.

Rather, they simply state that all judicial processes benefit from openness. While this is

undoubtedly true as a general proposition, in the context of pre-indictment investigation a general

benefit from openness is insufficient to overcome society's compelling interest in the secrecy of

investigative proceedings. As the Ninth Circuit noted in *Times Mirror*:

> Appellants essentially argue that any time self-governance or the integrity of the
> criminal fact-finding process may be served by opening a judicial proceeding and
> its documents, the First Amendment mandates opening them to the public. Were
> we to accept this argument, few, if any, judicial proceedings would remain closed.
> Every judicial proceeding, indeed every governmental process, arguably benefits
> from public scrutiny to some degree, in that openness leads to a better-informed
> citizenry and tends to deter government officials from abusing the powers of
> government. However, complete openness would undermine important values that
> are served by keeping some proceedings closed to the public. Openness may, for
> example, frustrate criminal investigations and thereby jeopardize the integrity of
> the search for truth that is so critical to the fair administration of justice.

873 F.2d at 1213; *see also Baltimore Sun*, 886 F.3d at 64 (citing *Times Mirror* in denying First

Amendment right of access to search warrant materials).

The common law right of access to judicial records also does not create a right to

investigative materials prior to indictment. Though a common law right of access to judicial

records exists,[1] no case cited by the subscribers indicates that an individual who is the subject of

a criminal investigation has a right to access investigative materials while the investigation is

pending. Courts routinely reject such requests. For instance, grand jury materials are typically

protected from disclosure indefinitely. *See* Fed. R. Crim. P. 6(e). Search warrants need not even

be filed until the warrant is returned, *see* Fed. R. Crim. P. 41(i); E.D. Va. Local R. 49(B) , and

search warrant affidavits may be sealed to protect an ongoing criminal investigation even after

the warrant is returned. *See Baltimore Sun*, 886 F.2d at 64 ("[W]hether the papers are sealed

when filed rests in the sound discretion of the judicial officer who issued the warrant."). The

Fourth Circuit has upheld the continued sealing of a search warrant affidavit three years after the

search warrant itself was issued. *See Media Gen. Operations*, 417 F.3d at 430-31; *see also*

*Baltimore Sun*, 886 F.2d at 64 ("[T]he need for sealing [search warrant] affidavits may remain

after execution and in some instances even after indictment."). Court have also denied access to

information regarding wiretaps, even where a witness before the grand jury could use the

information to assert a statutory right while testifying before the grand jury, because the marginal

---

[1]Subscribers assert that this common law right attaches to the Government's affidavit in support of a § 2703(d) order as well as the order itself. The Fourth Circuit has held the common law right of access attaches to search warrants and affidavits in support of search warrants. *See Baltimore Sun*, 886 F.2d at 63-64. The Fourth Circuit held that because the Fourth Amendment requires that search warrants be issued only after review by a neutral magistrate and upon probable cause, as well as the requirement of predecessor to Federal Rule of Criminal Procedure 41(i) that all search warrant documents be filed with the Clerk of the Court, those records were "judicial records" within the scope of the privilege. The Constitution does not require any judicial finding for the records at issue here – indeed the government may obtain this information using a subpoena without involving the court at all. *See* 18 U.S.C. § 2703(c)(2); *United States v. Clenney*, No. 09-5114, slip op. at 11 (4th Cir. Feb. 3, 2011). However, because the records at issue should remain sealed until after the investigation is concluded whether or not the common law presumption of access applies, the Court need not address whether the common law right of access applies to the underlying application.

10

procedural benefit to the witness would be too disruptive to the investigative process. *See In re Persico*, 491 F.2d 1156, 1162 (2d Cir. 1974).

The text and structure of the Stored Communications Act also supports sealing these records during the pendency of a criminal investigation. The subscribers' claim that the Stored Communications Act does not include language regarding the sealing of § 2703 orders is simply incorrect. Section 2705(b) states:

> A governmental entity acting under section 2703, when it is not required to notify the subscriber or customer under section 2703(b)(1) . . . may apply to a court for an order commanding a provider of electronic communications service or remote computer service to whom a warrant, subpoena, or court order is directed, for such a period as the court deems appropriate, not to notify any other person of the existence of the warrant, subpoena, or court order.

Here, the government is acting pursuant to § 2703, and is not required to provide notice to the subscribers. *See* Gov't Obj. at 12. Thus, the statute specifically authorizes a non-disclosure order. Where a statutory scheme provides protections for the materials at issue, it overrides the common law right of access. *See In re: N.Y. Times*, 577 F.3d at 408. The fact that the statute does not use the word "seal" is irrelevant.

> D. Even if the Clerk Did Not Publicly Docket the December 14, 2010 Order as a Motion to Seal, the Subscribers Are Not Entitled to Unsealing.

Finally, the subscribers argue that the December 14, 2010 Order should have been publicly docketed. Initially, there is no right to notice of process issued to third parties. *See S.E.C.*, 467 at 751; *Clem*, 2000 WL 353508, at *5; *Swearingen*, 605 F.2d at 127. Nor is there a right to public docketing of investigative proceedings that have historically been conducted secretly. *See In re Sealed Case No. 99-3024*, 199 F.3d 522, 525 (D.C. Cir. 1998) (holding proceedings ancillary to grand jury investigations need not be publicly docketed). The fact that an

11

order is at issue here, rather than a subpoena, is irrelevant. Indeed, grand jury subpoenas are court orders, enforceable by civil and criminal contempt. *See Brown v. United States*, 359 U.S. 41, 48 (1959), *overruled on other grounds by Harris v. United States*, 382 U.S. 162 (1965) ("A grand jury is clothed with great independence in many areas, but it remains an appendage of the court . . . It is the court's process which summons the witness to attend and give testimony, and it is the court which must compel a witness to testify if, after appearing, he refuses to do so."). Thus, for the same reason that grand jury process need not be docketed, there is no need to docket § 2703(d) orders prior to their unsealing.

Even if there is a right to public docketing of § 2703(d) orders, the subscribers are not entitled to a remedy of the unsealing of any such orders or to notice that other orders were issued seeking their information. Under the law of the Fourth Circuit and the rules of this Court, it is sufficient if an order that results from an investigative proceeding conducted *ex parte* and *in camera* be docketed in a way "that indicates its nature as a motion to seal." *See Media Gen. Operations*, 417 F.3d at 430; *see also* E.D. Va. Local R. 49(B). Here, the subscribers have received sufficient of the December 14, 2010 Order. It was unsealed and the subscribers have brought a challenge. That is all to which they are entitled.

III. <u>CONCLUSION</u>

The government will move to unseal the records when the investigation concludes. The subjects can vindicate their rights, if any, at that time, and the public will have access to any judicial records. What the subscribers seek is the ability to litigate the investigation prior to its conclusion. The subscribers' motion should be denied.


Respectfully submitted,

Neil H. MacBride
United States Attorney

By:  _____/s/_____
Andrew Peterson
John S. Davis
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia  22314
(703) 299-3700

13

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Opposition was filed with the Clerk of the Court on February 7, 2011, and a copy of this filing was e-mailed to opposing counsel at the following addresses:

John K. Zwerling                          Johnathan Shapiro
Stuart Sears                              Greenspun, Shapiro, Davis, & Leary
Zwerling, Liebig & Moseley, P.C.          3955 Chain Bridge Rd
108 N. Alfred Street                      Second Floor
Alexandria, VA 22314                      Fairfax, VA 22030
JZ@Zwerling.com                           Js@greenspunlaw.com
Counsel for Jacob Appelbaum               Counsel for Birgitta Jonsdottir

Nina J. Ginsberg
Dimuro Ginsberg P.C.
908 King Street, Suite 200
Alexandria, VA 22314
nginsberg@dimuro.com
Counsel for Rop Gonggrijp

Rebecca K. Glenberg
ACLU of Virginia Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, VA 23219
rglenberg@acluva.org


                            _____/s/_____
                            Andrew Peterson
                            John S. Davis
                            Assistant United States Attorneys
                            2100 Jamison Avenue
                            Alexandria, VA 22314
                            Phone: (703) 299-3700
                            Fax: (703) 299-3982