FILED

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

2011 FEB 10 P 4: 42

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

IN RE APPLICATION OF THE UNITED
STATES OF AMERICA FOR AN ORDER
PURSUANT TO 18 U.S.C. § 2703(d)

Misc. No. 10GJ3793
No. 1:11DM3 (Mag. Buchanan)

Hearing: February 15, 2011
10:30 a.m.

**UNDER SEAL**

**REPLY IN SUPPORT OF MOTION OF REAL PARTIES IN INTEREST
JACOB APPELBAUM, ROP GONGGRIJP, AND BIRGITTA JONSDOTTIR
FOR UNSEALING OF SEALED COURT RECORDS**

29

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ............................................................... ii

**INTRODUCTION** .......................................................................1

**ARGUMENT**............................................................................2

   I.    MOVANTS HAVE STANDING TO BRING THIS MOTION .............2

   II.   THE GOVERNMENT'S GENERIC INTERESTS IN SECRECY
        DO NOT JUSTIFY KEEPING THESE SEALED DOCUMENTS
        UNDER SEAL.........................................................................5

   III.  THE GOVERNMENT HAS NOT MET ITS BURDEN TO
        OVERCOME THE PRESUMPTION OF ACCESS. ............................10

   IV.  THE ABSENCE OF A PUBLIC DOCKET FOR THE SEALED
        MATERIALS IS NOT PERMISSIBLE. ...............................................16

**CONCLUSION** ................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Baltimore Sun Co. v. Goetz*, 886 F.2d 60 (4th Cir. 1989) ...............................passim

*Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491 (1975)...............................2, 4, 5

*Grandbouche v. United States (In re First Nat'l Bank)*,
   701 F.2d 115 (10th Cir. 1983) ...................................................................3

*In re Grand Jury Subpoena for N.Y. State Income Tax Records*,
   607 F.2d 566 (2d Cir. 1979) .......................................................................3

*In re Knight Publ'g Co.*, 743 F.2d 231 (4th Cir. 1984) ...........................................9

*In re Swearingen Aviation Corp.*, 605 F.2d 125 (4th Cir. 1979)...............................4

*Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157 (3d Cir. 1993) ......5

*Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v.
   Waterfront Comm'n of N.Y. Harbor*, 667 F.2d 267 (2d Cir. 1981).....................3

*Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589 (1978)....................................5, 12

*Perlman v. United States*, 247 U.S. 7 (1918)........................................................2, 3

*Pollard v. Roberts*, 283 F. Supp. 248 (E.D. Ark. 1968)
   (three-judge court), *aff'd per curiam*, 393 U.S. 14 (1968) ...................................2

*Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1 (1986)
   (*Press-Enterprise II*)...............................................................................9, 12

*Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249 (4th Cir. 1988)................10

*Stone v. Univ. of Md. Med. Sys. Corp.*,
   855 F.2d 178 (4th Cir. 1988) .............................................................9, 15, 16, 17

*United States v. Klepfer (In re The Herald Co.)*, 734 F.2d 93 (2d Cir. 1984).........7

*United States v. Mentzos*, 462 F.3d 830 (8th Cir. 2006).........................................14

*United States v. Moussaoui*, 65 F. App'x 881 (4th Cir. 2003) ...............................12

*United States v. Myers*, 593 F.3d 338 (4th Cir. 2010)..............................................3

*United States v. Rosen*, 487 F. Supp. 2d 703 (E.D. Va. 2007) ...............................14

*United States v. Soussoudis* (*In re Wash. Post Co.*),
    807 F.2d 383 (4th Cir. 1986) ........................................................................16, 17

*Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567 (4th Cir. 2004).........6, 9, 10

*Wash. Post Co. v. Hughes (In re Application & Affidavit for a*
    *Search Warrant)*, 923 F.2d 324 (4th Cir. 1991) ......................................8, 12, 13

## Statutes

18 U.S.C. § 2518.................................................................................................14

18 U.S.C. § 2703.............................................................................................passim

18 U.S.C. § 2705.................................................................................................15

Fed. R. Civ. P. 7(b) ...........................................................................................17

Fed. R. Crim. P. 6(e)..................................................................................4, 14, 17

## Other Authorities

Barton Gellman, *Twitter, Wikileaks and the Broken Market for Consumer*
    *Privacy*, Time Magazine: Techland, Jan. 14, 2011,
    http://techland.time.com/2011/01/14/
    twitter-wikileaks-and-the-broken-market-for-consumer-privacy/.......................5

Glenn Greenwald, *DOJ Subpoenas Twitter Records of Several WikiLeaks*
    *Volunteers*, Salon.com, Jan. 7, 2011,
    http://www.salon.com/news/opinion/glenn_greenwald/2011/01/07/twitter .......5

## INTRODUCTION

There is no reason, let alone a compelling reason, to keep under seal court documents related to the unsealed December 14, 2010 Order to Twitter or similar orders to other companies given that the existence of the government's investigation has now been confirmed, Movants now know that information about their communications is being sought by the government, and the Court has held that it is now "in the best interest of the investigation" to unseal the December 14 Order. Rather than confront these facts and the specific circumstances involved here, the government merely recites, over and over again, that the documents should remain sealed because there is a general right to secrecy concerning all pre-indictment judicial records. That position is wrong. Well-established Supreme Court and Fourth Circuit caselaw make clear that there is a presumption of access to all judicial records. It also ignores the repeated holdings of the Fourth Circuit that a generic, general need for "secrecy" is not sufficient to warrant sealing and that a court cannot seal matters unless the specific documents at issue merit sealing in the specific circumstances presented by the case. Because the circumstances here establish that the government has not and cannot meet its burden of demonstrating that its general interests in sealing heavily outweigh the significant interests of Movants and the public in obtaining access to these sealed documents, the docket in the Twitter matter should be unsealed, as should any other similar docket where the government has obtained § 2703 orders concerning Movants' communications.

## ARGUMENT

### I.   MOVANTS HAVE STANDING TO BRING THIS MOTION.

As a preliminary matter, the government incorrectly claims that Movants do not have standing to file this motion to unseal on the ground that "the subject of an investigation lacks standing to contest orders directed at third party witnesses." Government's Response in Opposition to the Real Parties' In Interest Motion for Unsealing of Sealed Court Records at 2-3 ("Opposition"). There is no support for the government's position, and the Supreme Court has soundly rejected it.

As explained in Movants' opening brief, in *Eastland v. U.S. Servicemen's Fund* — a case the government ignores — the Supreme Court held that individuals whose First Amendment-protected records are subpoenaed by the government from a third party have standing to bring an immediate action challenging the third-party subpoena.  421 U.S. 491, 501 & n.14 (1975).  As the Court explained, if individuals whose information is at stake were not permitted to bring such an action, their constitutional rights could be permanently frustrated because they could not count on a third party to stand up for their rights.  *Id.*; *see also id.* at 514 (Marshall, J., concurring) (emphasizing that the target must be given a forum to "assert its constitutional objections to the subpoena, since a neutral third party could not be expected to resist the subpoena by placing itself in contempt"); *Pollard v. Roberts*, 283 F. Supp. 248, 258-59 (E.D. Ark. 1968) (three-judge court), *aff'd per curiam*, 393 U.S. 14 (1968) (considering targets' challenge to subpoenas directed at third-party bank, and enjoining subpoenas because enforcement would violate targets' First Amendment rights of association).  The *Eastland* decision echoes *Perlman v. United States*, 247 U.S. 7 (1918), where the Court held that an individual whose information is

2

sought through a third-party subpoena need not wait for the recipient to refuse to comply with the subpoena and risk contempt in order to have a right to appeal. *Id.* at 13. Otherwise, the individual — in this case, Movants — would be "powerless to avert the mischief." *Id.*; *see also United States v. Myers*, 593 F.3d 338, 345 (4th Cir. 2010) (discussing *Perlman*); *In re Grand Jury Subpoena for N.Y. State Income Tax Records*, 607 F.2d 566, 570 (2d Cir. 1979) (stating that the reason for the "*Perlman* doctrine" is that "the holder of the privilege has no power to cause the custodian of the information to risk a contempt citation for non-disclosure").

Lower courts have followed the Supreme Court's clear guidance, consistently holding that individuals whose information is sought through subpoenas to third parties have standing to challenge such subpoenas. *See, e.g., Grandbouche v. United States (In re First Nat'l Bank)*, 701 F.2d 115, 117-19 (10th Cir. 1983) (holding that individuals had standing to challenge third-party records subpoena where the subpoena implicated their First Amendment associational rights); *Local 1814, Int'l Longshoremen's Ass'n, AFL-CIO v. Waterfront Comm'n of N.Y. Harbor*, 667 F.2d 267, 271, 274 (2d Cir. 1981) (permitting individuals' challenge to third-party subpoena, and upholding district court's decision to narrow subpoena to limit impairment of their First Amendment rights of association).

The government tries to evade this clear line of authority by broadly asserting — without any citations — that these standing principles apply only to claims brought by organizations to protect the identity of their members. Opposition at 4. That is not so. The cases turn on the fact that third parties cannot be counted on to protect others' rights, and that affected parties must be permitted to bring an action to protect their own

fundamental rights.  What is important is the nature of the right asserted — *e.g.*, in *Eastland*, as here, the First Amendment — not whether that right inures to an organization or to an individual.  Where, as here, a party's First Amendment speech and associational rights are at stake, the party — whether an organization or an individual — has standing to bring an action to challenge a third-party subpoena.

The government's reliance on *In re Swearingen Aviation Corp.*, 605 F.2d 125 (4th Cir. 1979), is similarly misplaced.  That case does not hold that the subject of a government subpoena always lacks standing to contest orders directed at third parties.  It simply says that targets of a third-party grand jury subpoena do not have standing to raise the Fed. R. Crim. P. 6(e) rights of third-party grand jury witnesses.  *Id.* at 127.  That is not this case.  Here, Movants are not seeking to raise the Rule 6(e) rights of the recipients of the government's § 2703 orders.  Movants seek only to raise their own First Amendment and common law rights of access to judicial records, so that they can bring challenges to protect their fundamental rights, which are implicated by the underlying § 2703 orders.[1]

Unlike in *In re Swearingen*, Movants have alleged direct injury to their own rights, in two ways.  First, like any member of the public, Movants have a common law and First Amendment right of access to the sealed documents, and they have alleged that the sealing violates those rights.  Second, Movants have a separate personal interest in unsealing these documents so that they can challenge the underlying § 2703 orders to

---

[1] Contrary to the government's representation, Movants are not asserting a constitutional right to receive personal notice any time the government seeks to obtain information from third parties, so the Court need not resolve that issue.  Rather, Movants are asserting their well-established First Amendment and common law rights of access to judicial records.

protect their fundamental rights. These interests are more than sufficient to create the injury in fact necessary for standing purposes. *Eastland*, 421 U.S. at 501 & n.14.[2]

If the government were correct that individuals always lack standing to move to unseal third-party subpoenas or court orders, that would upend the entire jurisprudence on access to judicial records. It would mean that the public, often via the press, would not have standing to move to unseal judicial documents unless those documents were their personal records. That is clearly not the law. *See, e.g., Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978) ("[T]he courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents.").[3]

## II.   THE GOVERNMENT'S GENERIC INTERESTS IN SECRECY DO NOT JUSTIFY KEEPING THESE SEALED DOCUMENTS UNDER SEAL.

Throughout its Opposition, the government claims that the general interest in secrecy of ongoing criminal investigations justifies keeping the sealed materials under

---

[2] Movants are not engaging in "pure speculation" about the existence of § 2703 orders targeting their communications. Movants know that the government has obtained one such order to Twitter. It is more than reasonable for them to believe that the government has obtained similar orders concerning the various other communication services they use. *See, e.g.,* Barton Gellman, *Twitter, Wikileaks and the Broken Market for Consumer Privacy*, Time Magazine: Techland, Jan. 14, 2011, http://techland.time.com/2011/01/14/twitter-wikileaks-and-the-broken-market-for-consumer-privacy/ ("It is beyond reasonable doubt that authorities asked other companies to supply the same kinds of information sought from Twitter, but none of them admit it."); Glenn Greenwald, *DOJ Subpoenas Twitter Records of Several WikiLeaks Volunteers*, Salon.com, Jan. 7, 2011, http://www.salon.com/news/opinion/glenn_greenwald/2011/01/07/twitter ("It's difficult to imagine why the DOJ would want information only from Twitter . . . .").

[3] There is no exception to the standing rule for those whose information is sought, as opposed to the media or general public. *Leucadia, Inc. v. Applied Extrusion Techs., Inc.*, 998 F.2d 157, 167 (3d Cir. 1993) ("The Supreme Court has made it plain that all persons seeking to inspect and copy judicial records stand on an equal footing, regardless of their motive for inspecting such records.").

seal. The government is incorrect. Because "not every release of information contained in an ongoing criminal investigation file will necessarily affect the integrity of the investigation," a generalized interest in "protecting the integrity of an ongoing law enforcement investigation" cannot justify sealing judicial documents. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 579 (4th Cir. 2004). "[I]t is not enough simply to assert this general principle without providing specific underlying reasons for the district court to understand how the integrity of the investigation reasonably could be affected by the release of such information" with respect to any document that the government wishes to keep under seal. *Id.* It is, thus, the government's burden to present "specific facts and circumstances" to justify "the effort to restrict public access" to the specific documents at issue. *Id.*

The government does not come close to meeting this burden, claiming only generalized, generic interests in secrecy regarding ongoing investigations that have no applicability to the circumstances at issue here. For example, the government claims that revealing these orders will "lead to intimidation of grand jury members." Opposition at 7. Although that may generally be a governmental interest, it is not an interest in these circumstances: these orders were issued by the Court, not by a grand jury. The government's general fears that unsealing will "reveal targets of the investigation" and "allow subjects of the investigation to frustrate the aims of the order by destroying evidence" are similarly not present here. Opposition at 5, 9. Unlike in other ongoing investigations, the targets, subjects, and witnesses of this investigation already know who they are since the December 14 Order has been unsealed, revealing the identities of the

individuals whose information the government is seeking.[4]  For that reason, any risk of

destruction of evidence would already exist.

This absence of specific facts and circumstances justifying sealing of the specific

documents at issue is especially dispositive here, given that the Court has already

unsealed the December 14 Order.  Whether or not any initial sealing was justified, the

unsealing of the December 14 Order has dramatically changed the circumstances and

removed any rationale for secrecy.  Indeed, the Court's January 5 Order concluded that

unsealing the December 14 Order was "in the best interest of the investigation,"

confirmed the existence of the government's investigation, and revealed that the

investigation seeks information regarding Movants' communications.  In these

circumstances, the government cannot simply assert a general need to maintain complete

secrecy to keep the existence of the investigation or the identity of the witnesses a secret.

*See United States v. Klepfer (In re The Herald Co.)*, 734 F.2d 93, 101 (2d Cir. 1984)

(closure impermissible where information "sought to be kept confidential has already

been given sufficient public exposure").  The government's failure to address the actual

circumstances involved here and the need for sealing in view of those circumstances is

fatal to its desire to keep the sealed documents under seal.

On January 5, this Court unsealed the December 14 Order because doing so was

"in the best interest" of the investigation.  The government completely ignores that

holding; instead, in an attempt to justify continued closure, it repeatedly focuses on the

Court's initial December 14 ruling that disclosure would jeopardize the investigation.

---

[4] To the extent the other § 2703 orders reveal the names of individuals other than those
mentioned in the December 14 Order, and the Court determines that those names cannot
be publicly disclosed, that interest can be met by redacting those new names and
unsealing the redacted documents.

That circumstance has obviously changed and is no longer a reason to warrant sealing. Although it notes some discrete facts that remain secret even after the unsealing of the December 14 Order, the government provides no explanation for how unsealing the remainder of the Twitter docket or the other § 2703 orders and applications would reveal those facts or harm any governmental interest in this investigation. Instead, the government simply contends that complete sealing is warranted in all criminal investigations and that it will move to unseal the sealed documents when the entire investigation concludes — whenever that may be. Opposition at 6, 13.

The government does not, however, have unilateral authority to decide when unsealing is appropriate. The Court must conduct an independent review of the documents the government wishes to keep secret and make its own judgment about whether continued sealing is justified given the present circumstances. *See Wash. Post Co. v. Hughes (In re Application & Affidavit for a Search Warrant)*, 923 F.2d 324, 331 (4th Cir. 1991) ("The court is not obliged to indulge the requests of the trial participants but must make an independent judgment balancing all the interests."). Even if the government were able to show that the release of certain information in the sealed documents would cause harm, the appropriate response would not be a complete denial of access, but for that specific, harmful information to be redacted prior to unsealing the redacted documents. *See, e.g., Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 65-66 (4th Cir. 1989) (holding that when a denial of access is justified, the judicial officer "must consider alternatives to sealing the documents," which "ordinarily involves disclosing some of the documents or giving access to a redacted version"); *Stone v. Univ. of Md.*

*Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988) (same); *In re Knight Publ'g Co.*, 743 F.2d 231, 235 (4th Cir. 1984) (same).

In place of setting forth specific facts and circumstances to meet its burden, the government suggests that pre-indictment investigative documents should never be unsealed. That is not the law. *See Va. Dep't of State Police*, 386 F.3d at 575 ("The common law presumes a right of the public to inspect and copy all judicial records and documents." (citations and quotation marks omitted)). For example, in *Baltimore Sun*, the Fourth Circuit held that there was a common law right of access to a search warrant affidavit even though an indictment had not yet been returned, and vacated the district court's judgment sealing a search warrant affidavit. *Baltimore Sun*, 886 F.2d at 66. It did so because the sealing was based merely on a general finding that "the public interest in the investigation of crime outweighed the [media's] interest in access prior to return of the indictments." *Id.* Likewise, initial presentments and bail hearings in the federal system are generally open whether they take place pre- or post-indictment. In *Press-Enterprise II*, the Supreme Court held that there was a First Amendment right of access to preliminary hearings in California — a hearing that, under that state's criminal procedure, determines whether there is sufficient evidence to "hold the defendant to answer" and which may substitute for the grand jury indictment process. *See Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 12-13 (1986) (*Press-Enterprise II*). Thus, even pre-indictment, a court must provide specific, particularized findings to justify sealing the specific documents at issue, consider alternatives to sealing, and ensure that any sealing is narrowly tailored. *Baltimore Sun*, 886 F.2d at 65-66.

The government also contends, wrongly, that Movants are seeking to "identify witnesses" and to "publicly litigate" various "subjects" related to the criminal investigation. Opposition at 1, 7. Movants seek nothing of the sort. Movants do not seek every piece of information about the entire investigation, but instead make a narrow request that the Court unseal only the § 2703 proceedings related to them so that Movants can challenge the orders. As the motion explains in detail, Movants do so not to identify witnesses, but to be able to protect their fundamental rights and to vindicate their, and the public's, rights under the First Amendment and common law to access those materials.

## III.   THE GOVERNMENT HAS NOT MET ITS BURDEN TO OVERCOME THE PRESUMPTION OF ACCESS.

The government does not seriously dispute that because the sealed materials are judicial records, there is a presumption of access to them. Nor could it, because the caselaw makes clear that there is a common law right of access to all judicial records. *See* Motion of Real Parties in Interest For Unsealing at 15-17 (hereinafter "Mot."). That presumption of access may only be overcome if the government shows "'some significant interest that outweighs the presumption'" and that "'countervailing interests heavily outweigh the public interests in access.'" *Va. Dep't of State Police*, 386 F.3d at 575 (quoting *Rushford v. New Yorker Magazine, Inc.*, 846 F.2d 249, 253 (4th Cir. 1988)).

As discussed in Movants' opening brief, there are numerous distinct interests that would be furthered by unsealing the sealed documents. Mot. at 11-14 (Movants' interests) & 22-25 (public's interests). The government does not even attempt to demonstrate how its interests here outweigh those interests in unsealing. Instead, the government ignores those interests entirely, focusing only on its purported interests. By

definition, the government has, therefore, not met its burden of showing that the balance heavily weighs in its favor.

First, because the Court has previously determined that Movants and the public can be made aware of the underlying investigation and the December 14 Order, no legitimate government interest, let alone a compelling one, is served by continued sealing of the materials. Mot. at 10-11. That is especially the case given that the Court has concluded that disclosing the December 14 Order was "in the best interest of the investigation."

Second, Movants have a significant interest in learning about the government's legal efforts to obtain their communications records so that they can take steps to protect their constitutional rights. Mot. at 11-14.

Third, there is an immense public interest in unsealing these sealed materials. The sealed documents concern a matter of strong public interest — the ongoing debate about WikiLeaks' publication of information concerning the U.S. government's activities abroad — and their disclosure would significantly serve the public interest. Mot. at 22-24. Unsealing the documents would also increase the public's ability to participate meaningfully in a separate, but equally important, debate about the proper balance in the digital age between the right to privacy and law enforcement needs. Mot. at 24-25.

Unsealing the sealed documents would also serve the public's well-established interests in having an open judicial system. Although the government conclusorily contends that there are no relevant interests in openness with respect to § 2703 proceedings and hence no First Amendment right of access, that is not correct. Openness would directly aid the § 2703 process at issue here for the same reason that courts have

deemed the First Amendment and common law rights of access to apply to most court proceedings: transparency in these proceedings would ensure the fairness of the proceedings, decrease bias, improve public perception of the justice system, and enhance the chances that any resulting orders are well-justified and not overbroad. *See, e.g.,* *Nixon,* 435 U.S. at 598 (explaining that the law's recognition of the importance of judicial transparency serves "the citizen's desire to keep a watchful eye on the workings of public agencies . . . [and] the operation of government."); *United States v. Moussaoui,* 65 F. App'x 881, 885 (4th Cir. 2003) ("The value of openness in judicial proceedings can hardly be overestimated."); *In re Application & Affidavit for a Search Warrant,* 923 F.2d at 330-31 (discussing the "magnified" public interest in having access to the criminal justice system and in understanding "law enforcement systems and how well they work"). Because opening these proceedings would have a significant, positive impact on the judicial process under which these sealed documents were filed and obtained, these interests support a First Amendment right of access to the sealed materials. *See, e.g.,* *Press-Enterprise II,* 478 U.S. at 8-9, 11 n.3 (establishing the "logic" prong and noting that the First Amendment right attached to certain pretrial proceedings even when they had "no historical counterpart," where the "importance of the . . . proceeding" was clear).

That openness would be beneficial to the § 2703 proceedings at issue here is abundantly demonstrated by these proceedings' specific circumstances. The December 14 Order requires Twitter to produce records related to all of Movants' communications on Twitter, regardless of any connection to WikiLeaks. Had that Order not been disclosed, Movants would have been unaware of its breadth, making them unable to mount a challenge to prevent the violation of their constitutional rights. Indeed, the

decision of the government to now require Twitter to produce only some of the requested information shows precisely why openness – and the "watchful eye" of the citizenry – is vital: to ensure that government agencies operate within bounds and that fundamental rights are not unnecessarily trammeled. Movants have a similar interest in the disclosure of the other § 2703 orders so that Movants can properly challenge them as well and so that they will similarly be subject to the watchful eye of the citizenry.

The government analogizes § 2703 applications to search warrant affidavits, suggesting that there is never a pre-indictment right of access to such materials. As discussed earlier, *see supra* at 9, that is not correct. The Fourth Circuit has held that there is a common law right of access to search warrant affidavits, and whether or not a search warrant affidavit should be sealed in a given case (in whole or in part) depends on a weighing of the opposing interests and the specific circumstances of the case. *See Baltimore Sun*, 886 F.2d at 63-66 (holding that redacted version of affidavit should have been released); *In re Application & Affidavit for a Search Warrant*, 923 F.2d at 330-31 (upholding district court's decision to unseal and release affidavit in its entirety). Although it may be appropriate to place certain search warrant affidavits under seal, a court must still consider alternatives to sealing and reach specific conclusions about the need for continued sealing, even prior to the return of an indictment. *Baltimore Sun*, 886 F.2d at 66 ("Both the magistrate and the district court concluded that the public interest in the investigation of crime outweighed the Sun's interest in access prior to return of the indictments. But conclusory assertions are insufficient to allow review; specificity is required.").

Distinctions between the nature of search warrant affidavits and § 2703 applications suggest that, if anything, there should be greater access to § 2703 orders and applications.[5] The principal concern on which the Fourth Circuit relied in holding that there was no First Amendment right of access to a search warrant affidavit — avoiding tipping off the subject of the search until after the warrant was executed "lest he destroy or remove evidence," *Baltimore Sun*, 886 F.2d at 64 — is not present in the case of a § 2703 order, where the recipient of the order is a third-party company and the relevant records are not subject to alteration or destruction by the target. This rationale is certainly not present here, where the existence of the investigation is already public, and Movants already know that information about them is being sought. Because the constitutional harm will occur once records are turned over to the government, Movants will only have the opportunity to vindicate their rights if they can unseal and challenge the orders now.

Citing cases concerning the lack of public access to wiretap materials and grand jury proceedings, the government suggests that the Stored Communications Act itself precludes a right of access. That is not correct. The Wiretap Act specifically mandates that applications and orders "shall be sealed" and "shall be disclosed only upon a showing of good cause before a judge[.]" *See* 18 U.S.C. § 2518(8)(b). Federal Rule of Criminal Procedure 6(e) similarly requires secrecy in grand jury matters, subject to

---

[5] Because of these distinctions, the Fourth Circuit's rejection of a First Amendment right of access to search warrant affidavits in *Baltimore Sun* is not dispositive of whether there is a First Amendment right of access to § 2703 applications. In any event, *Baltimore Sun* does not conclude that there is no First Amendment right of access to judicial orders, such as § 2703 orders. In fact, there is a First Amendment right of access to judicial orders. *See, e.g., United States v. Mentzos,* 462 F.3d 830, 843 n.4 (8th Cir. 2006); *United States v. Rosen,* 487 F. Supp. 2d 703, 715-16 (E.D. Va. 2007).

certain exceptions. Under the Stored Communications Act, by contrast, the default is

openness. If the government wishes to command the service provider not to disclose the

existence of the order, it must make a separate request and an affirmative showing, and a

court must find that revealing the existence of the order "will result in" a specified

adverse result. *Id.* § 2705(b). Simply because there is authority to conduct some § 2703

proceedings in secret does not mean that all aspects of every § 2703 matter must be

conducted in secret. Secrecy, as the SCA and right of access jurisprudence make clear,

must be justified based on a weighing of the specific facts and circumstances of a

particular case and situation. Because secrecy of the § 2703 orders and applications is

not justified in this case, the documents should be unsealed.[6]

The only specific interest the government attempts to articulate for why these

materials should be sealed is avoiding the public revelation of the names of grand jury

witnesses. The government fails to explain, however, how the release of the December

14 Order, and the Court's conclusion that such release was "in the best interest of the

investigation," can be squared with the government's current assertion that the danger

that generally ensues from the release of names of grand jury witnesses exists here. The

interests that the government articulates — a fear that knowledge of the names of

witnesses could generally lead to witness intimidation or the alteration or destruction of

---

[6] In a footnote, the government suggests that because it could have proceeded under the
Stored Communications Act by subpoena rather than by court order, the common law
right of access does not apply. Opposition at 10 n.1. Whether or not the government
might have proceeded by subpoena, however, is irrelevant. Where, as here, the
government files an application with and obtains an order from a court, that application
and order are judicial records subject to the right of access. *See, e.g., Baltimore Sun*, 886
F.2d at 63-64 (holding that search warrant affidavits are judicial records to which a
common law right of access attaches); *Stone*, 855 F.2d at 180-81 (including documents
filed by litigants in the court record as among the "judicial records and documents" to
which the common law presumption of access attaches).

evidence — are simply not relevant here where the witnesses at issue are large corporations over whom Movants have little influence.  Moreover, any other related interest in secrecy — such as avoiding tipping off Movants that the government seeks their communications — has evaporated in light of the disclosure of the December 14 Order.

## IV.   THE ABSENCE OF A PUBLIC DOCKET FOR THE SEALED MATERIALS IS NOT PERMISSIBLE.

Even if it were appropriate to maintain some of the sealed documents under seal, the absence of a public docket for these materials is not justifiable.  The Fourth Circuit has repeatedly explained that courts must place judicial records on the public docket in a manner sufficient to provide the public with notice of the matter and an opportunity to seek to unseal them.  *See, e.g.*, *Stone*, 855 F.2d at 181 (holding that before documents can be sealed, notice must be provided to the public and the matter must be docketed "reasonably in advance of deciding the issue" to give the public a "reasonable opportunity to challenge it"); *United States v. Soussoudis* (*In re Wash. Post Co.*), 807 F.2d 383, 390 (4th Cir. 1986) (same).  That is required even for matters such as search warrant proceedings, which sometimes must be granted almost immediately.  *Baltimore Sun*, 886 F.2d at 65 (holding that courts must provide advance public notice of sealing requests and "an opportunity . . . to voice objections to the denial of access," and suggesting that in time-urgent scenarios such as a search warrant, such notice "can be given by docketing the order sealing the documents").  There is no reason — let alone legal justification — why § 2703 orders should be treated any differently.

The government attempts to overcome this clear Fourth Circuit caselaw by asserting that "there is no right to notice of process issued to third parties." Opposition at

11. That argument is misplaced, at best. Although there may not be a right to *personal* notice of all judicial processes, there is a right to *public* notice of all requests to seal material. That is accomplished by, among other things, publicly docketing such matters so that anyone watching the docket can move to unseal them. *Baltimore Sun*, 886 F.2d at 65; *Stone*, 855 F.2d at 181; *In re Wash. Post Co.*, 807 F.2d at 390.[7]

There is no dispute that the sealed materials have not been publicly docketed. That is impermissible under this clear Fourth Circuit caselaw. The government's argument that such docketing is not necessary because Movants have received sufficient alternative notice of the December 14 Order misses the point. Notice of the Order to Twitter does not mean the public has received notice of the other § 2703 orders to other entities. Those orders should immediately be placed on the public docket in a manner that provides the public with notice of them and an opportunity to challenge their sealing. For the reasons given above, these materials should be unsealed. At a minimum, however, the Court should require them to be publicly docketed so that an appropriate challenge to them can be presented.[8]

---

[7] The Court need not address the government's assertion that grand jury documents are not publicly docketed. The government has stated that the sealed documents were not sealed pursuant to Fed. R. Crim. P. 6(e), the grand jury secrecy rule, Govt's Response in Opp'n to the Real Parties' In Interest Mot. for Immediate Unsealing of Mots. and Upcoming Hearing at 1 (filed Feb. 4, 2011), so the propriety of docketing grand jury proceedings is irrelevant here.

[8] That these materials appear to have all been sealed without a formal motion for sealing is also procedurally suspect. *See In re Wash. Post Co.*, 807 F.2d at 386 n.1 ("We note that this procedure [for requesting that matters not be placed on the public docket] failed to comply with Fed. R. Civ. P. 7(b)(1), which provides that '[a]n application to the court for an order shall be by motion.'").

## CONCLUSION

For the foregoing reasons, and those discussed in the Movants' moving papers,

the Court should unseal the sealed court records.


Dated:  February 10, 2011

By:  _____

John K. Zwerling, VSB No. 8201
Stuart Sears, VSB No. 71436
ZWERLING, LEIBIG & MOSELEY, P.C.
108 North Alfred Street
Alexandria, VA  22314
Telephone:      (703) 684-8000
Facsimile:      (703) 684-9700
Email:      JZ@Zwerling.com
Email:      Chris@Zwerling.com
Email:      Andrea@Zwerling.com
Email:      Stuart@Zwerling.com

John W. Keker (admitted *pro hac vice*)
Rachael E. Meny (admitted *pro hac vice*)
Steven P. Ragland (admitted *pro hac vice*)
KEKER & VAN NEST LLP
710 Sansome Street
San Francisco, CA  94111-1704
Telephone:      (415) 391-5400
Facsimile:      (415) 397-7188
Email:      jkeker@kvn.com
Email:      rmeny@kvn.com
Email:      sragland@kvn.com


**Attorneys for JACOB APPELBAUM**

Dated: February 10, 2011

By: _____ with permission for

Nina J. Ginsberg, VSB No. 19472
DIMUROGINSBERG, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Phone: 703-684-4333
Fax:   703-548-3181
Email: nginsberg@dimuro.com

John D. Cline (admitted *pro hac vice*)
LAW OFFICE OF JOHN D. CLINE
115 Sansome Street, Suite 1204
San Francisco, CA  94104
Phone:  415.322.8319
Fax: 415.524.8265
Email: cline@johndclinelaw.com

K.C. Maxwell (admitted *pro hac vice*)
LAW OFFICE OF K.C. MAXWELL
115 Sansome Street, Suite 1204
San Francisco, CA  94104
Phone:  415.322.8817
Fax: 415.888.2372
Email: kcm@kcmaxlaw.com

**Attorneys for ROP GONGGRIJP**

19

Dated:  February 10, 2011

By: _____ with permission for

Rebecca K. Glenberg, VSB No. 44099
AMERICAN CIVIL LIBERTIES UNION
    OF VIRGINIA FOUNDATION, INC.
530 E. Main Street, Suite 310
Richmond, Virginia 23219
Telephone: (804) 644-8080
Facsimile: (804) 649-2733
Email: rglenberg@acluva.org

Jonathan Shapiro
GREENSPUN, SHAPIRO, DAVIS
    & LEARY, P.C.
3955 Chain Bridge Road
Second Floor
Fairfax, VA 22030
Telephone: (703) 352-0100
Facsimile: (703) 591-7268
Email: js@greenspunlaw.com

Cindy A. Cohn (admitted *pro hac vice*)
Lee Tien (admitted *pro hac vice*)
Kevin S. Bankston (admitted *pro hac vice*)
Marcia Hofmann (admitted *pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:  (415) 436-9333 x108
Facsimile:  (415) 436-9993
Email:  cindy@eff.org
Email:  tien@eff.org
Email:  bankston@eff.org
Email:  marcia@eff.org

Aden J. Fine (admitted *pro hac vice*)
Benjamin Siracusa Hillman (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone:  (212) 549-2500
Facsimile:  (212) 549-2651
Email:  afine@aclu.org
Email:  bsiracusahillman@aclu.org

**Attorneys for BIRGITTA JONSDOTTIR**

20

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing motion was sent via e-mail this 10th day of February, 2011, to:

Andrew Peterson, Esq.
John S. Davis, Esq.
Assistant United States Attorney
600 East Main Street
Suite 1800
Richmond, VA 23219-2447
Ph: 804-819-7431
Andy.Peterson@usdoj.gov
John.S.Davis2@usdoj.gov

Stuart Alexander Sears

21