UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. §2703(d) | MISC. NO. 10-4-10GJ3793<br><br>1:11-DM-00003 |
| --- | --- |

**REPLY IN SUPPORT OF OBJECTIONS OF REAL PARTIES IN INTEREST JACOB APPELBAUM, BIRGITTA JONSDOTTIR AND ROP GONGGRIJP TO MARCH 11, 2011 ORDER DENYING MOTION TO VACATE AND DENYING IN PART MOTION TO UNSEAL**

## TABLE OF CONTENTS

I.  INTRODUCTION ................................................................................................. 1

II.  ARGUMENT ...................................................................................................... 1

    A.  A *De Novo* Standard of Review Applies Here. ....................................... 1

    B.  This Court Should Reject the Magistrate's Denial of the Parties'
        Motion to Vacate. ................................................................................... 3

        1.  The Parties have standing to challenge the Twitter Order. ........ 3

        2.  The Twitter Order violates § 2703. ............................................ 4

        3.  This Court should vacate the Order and avoid the
            Constitutional questions. ............................................................ 8

    C.  The Twitter Order Violates the Parties' First Amendment Rights. ......... 8

    D.  The Twitter Order Violates the Parties' Fourth Amendment Rights. .................. 11

    E.  The Magistrate Erred in Keeping the Documents Sealed. ..................... 13

        1.  The government has not met its heavy burden. ......................... 13

            a.  The Magistrate's Order applied the wrong legal
                standards and ignored the immense interests in
                unsealing. .......................................................................... 13

            b.  The government's generic interests in secrecy do not
                justify sealing. .................................................................. 14

            c.  There is no reason to maintain the other § 2703 Orders
                under seal. .......................................................................... 17

        2.  The Magistrate's Order does not explain why alternatives to
            sealing are not sufficient. ......................................................... 19

III.  CONCLUSION ................................................................................................ 20

# TABLE OF AUTHORITIES
## Federal Cases

*Arizona v. Gant*
  129 S. Ct. 1710 (2009) ..................................................................................... 16

*Baltimore Sun Co. v. Goetz*
  886 F.2d 60 (4th Cir. 1989) .................................................. 14, 15, 16, 19

*Bell v. Jarvis*
  236 F.3d 149 (4th Cir. 2000) ......................................................................... 16

*Elrod v. Burns*
  427 U.S. 347 (1976) ....................................................................................... 20

*FTC v. Standard Fin. Mgmt. Corp.*
  830 F.2d 404 (1st Cir. 1987) ......................................................................... 17

*Gibson v. Fla. Legislative Invest. Comm.*
  372 U.S. 539 (1963) ....................................................................................... 10

*GTSI Corp. v. Wildflower Int'l, Inc.*
  No. 1:09CV123, 2009 WL 1248114 (E.D. Va. Apr. 30, 2009) ................. 19

*Haines v. Ligget Group Inc.*
  975 F.2d 81 (3d Cir. 1992) ............................................................................... 3

*Hartford Courant Co. v. Pellegrino*
  380 F.3d 83 (2d Cir. 2004) ............................................................................. 18

*In re Application and Affidavit for a Search Warrant*
  923 F.2d 324 (4th Cir. 1991) ...................................................................... 2, 20

*In re Application for Pen Register*
  396 F.Supp.2d 747 (S.D. Tex. 2005) ......................................................... 6, 7

*In re Application of the United States*
  620 F.3d 304 (3d Cir. 2010) ................................................................. 7, 8, 12

*In re Boston Herald, Inc.*
  321 F.3d 174 (1st Cir. 2003) ......................................................................... 15

*In re Grand Jury Subpoena: SDT*
  829 F.2d 1291 (4th Cir. 1987) ....................................................................... 10

*In re Oral Testimony of a Witness Subpoened*
  182 FRD 196 (E.D. Va. 1998) .......................................................................... 1

*In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*
  562 F. Supp. 2d 876 (S.D. Tex. 2008) ......................................................... 17

*In re Subpoena Duces Tecum*
  228 F.3d 341 (4th Cir. 2000) ........................................................................ 6, 7

*In re Wash. Post Co.*
  807 F.2d 383 (4th Cir. 1986) ............................................................. 14, 15, 18

*In re: Grand Jury 87-3*
  955 F.2d 229 (4th Cir. 1992) ......................................................................... 10

*K.S. v. Ambassador Programs Inc.*
  No. 1:10CV439, 2010 WL 3565481 (E.D. Va. Sept. 3, 2010) ................. 19

*Koon v. United States*
    518 U.S. 81 (1996) .................................................................................... 3

*Media General Operations, Inc. v. Buchanan*
    417 F.3d 424 (4th Cir. 2005) ................................................................... 19

*NAACP v. Alabama*
    357 U.S. 449 (1958) .................................................................................. 9

*Nixon v. Warner Commc'ns, Inc.*
    435 U.S. 589 (1978) ........................................................................... 13, 17

*NLRB v. Frazier*
    966 F.2d 812 (3d Cir. 1992) ...................................................................... 2

*Osband v. Woodford*
    290 F.3d 1036 (9th Cir. 2002) ................................................................... 2

*Press-Enterprise Co. v. Super. Ct. of Cal.*
    478 U.S. 1 (1986) ............................................................................... 16, 17

*Stone v. Univ. of Md. Med. Sys. Corp.*
    855 F.2d 178 (4th Cir. 1988) .............................................................. 18, 19

*Terry v. Ohio*
    392 U.S. 1 (1968) ...................................................................................... 5

*U.S. ex rel. Permison v. Superlative Techs., Inc.*
    492 F. Supp. 2d 561 (E.D. Va. 2007) ...................................................... 19

*United States v. Chagra*
    701 F.2d 354 (5th Cir. 1983) ................................................................... 16

*United States v. Criden*
    675 F.2d 550 (3d Cir. 1982) .................................................................... 16

*United States v. Curtis*
    237 F.3d 598 (6th Cir. 2001) ..................................................................... 3

*United States v. Foster*
    564 F.3d 852 (7th Cir. 2009) ................................................................... 15

*United States v. Karo*
    468 U.S. 705 (1984) ................................................................................ 12

*United States v. Maynard*
    615 F.3d 544 (D.C. Cir. 2010) ................................................................ 12

*United States v. R. Enterprises, Inc.*
    498 U.S. 292 (1991) .................................................................................. 6

*United States v. Rosen*
    487 F. Supp. 2d 703 (E.D. Va. 2007) ...................................................... 17

*United States v. Smith*
    780 F.2d 1102 (4th Cir. 1985) ................................................................... 5

*United States v. Valenti*
    987 F.2d 708 (11th Cir. 1993) ................................................................. 18

*United States v. Valenzuela-Bernal*
    458 U.S. 858 (1982) .................................................................................. 5

*Va. Dep't of State Police v. Wash. Post*
  386 F.3d 567 (4th Cir. 2004)................................................2, 13, 14, 15, 16

### Federal Statutes

18 U.S.C. § 2703 ...............................................................................*passim*

18 U.S.C. § 2703(d)............................................................................*passim*

18 U.S.C. §§ 2712, 2707 .............................................................................3

### Federal Rules

Fed. R. Crim. Proc. 59..................................................................................1

### Constitutional Provisions

First Amendment................................................................................*passim*

Fourth Amendment.............................................................6, 11, 13, 20

## I.    INTRODUCTION

The government's Response to Objections ("Opp.") distorts the plain language of 18

U.S.C. § 2703, draws false analogies between the technology of the last century and the far more

pervasive technology at issue here, and trivializes both the Parties' and the public's constitutional

rights.  The Court should overturn the Magistrate's Order in all respects.

## II.    ARGUMENT

### A.    A *De Novo* Standard of Review Applies Here.

Objections to a Magistrate's order that dispose of the underlying matter must be reviewed

*de novo.  See e.g.*, Fed. R. Crim. Proc. 59(b)(3); Objections ("Obj.") at 5.  *De novo* review

applies here because the Magistrate's Order is dispositive of the Parties' attempt to vacate and

unseal this § 2703 Order—the entire proceeding before this Court and under this case number.

The government claims that the Objections should be resolved under a "contrary to law

or clearly erroneous" standard, rather than *de novo*.  Opp. at 3-4.  As Rule 59's Advisory Notes

state, Rule 59(a)'s "contrary to law" standard applies only for "those matters that do not dispose

of the case."  Fed. R. Crim. Proc. 59 (Notes).  The government's argument that the Magistrate's

Order is not dispositive because it does not resolve the entire grand jury investigation itself

ignores key facts.[1]  The proceeding before this Court is <u>not</u> the grand jury matter.

Indeed, the government's request for the underlying § 2703 order appears to have been

---

[1] The government does not cite <u>any</u> caselaw that supports this claim.  Instead, most of the government's cited cases simply restate the "clearly erroneous" standard without analyzing when it applies.  *See* Opp. at 4.  And, even the two cited cases regarding § 2703 orders simply apply Rule 59(a)'s standard without analyzing whether the Magistrate order was dispositive of all matters regarding the § 2703 order at issue and without analyzing whether this standard is appropriate.  *Id.* at note 3.  Similarly, *In re Oral Testimony of a Witness Subpoened*, 182 FRD 196 (E.D. Va. 1998), holds that a motion to enforce an administrative subpoena is a dispositive motion and, although it cites some non-applicable dicta regarding grand jury subpoenas, it does not address the dispositive nature of an order enforcing a § 2703 order issued under circumstances like those here.

conducted as a separate proceeding from any related grand jury matter from the beginning. The order was issued in a case captioned "In the Matter of the § 2703(d) Order Relating to Twitter Accounts: Wikileaks, Rop_G, Ioerror; and Birgittaj." *See* Dkt. 45-2 at 17. Moreover, after the § 2703 Order was issued, the Parties instituted this independent proceeding when they filed motions seeking to vacate and to unseal the Twitter Order. This proceeding was given a separate case number, 1:11dm00003, and a different caption. *See* Dkt. 16. The Magistrate's Order was issued in this new proceeding, and addresses the only motions pending in that proceeding and now before this Court. *See* Dkt. 38. The Order is thus dispositive as to this matter because it completely resolves these motions and, if sustained, ends the Parties' proceedings before this Court. *See e.g., NLRB v. Frazier*, 966 F.2d 812, 815, 817 (3d Cir. 1992) (Magistrate's order dispositive where district court proceeding was instituted for the sole purpose of determining a motion to quash a subpoena). Since the Magistrate's Order disposes of this matter, it should be reviewed *de novo*.

This Court must also review the Magistrate's decision not to unseal the documents *de novo*. Any denial, as here, of the First Amendment right of access gets *de novo* review. *Va. Dep't of State Police v. Wash. Post*, 386 F.3d 567, 575 (4th Cir. 2004) . As for the common law right, although the standard of review in the court of appeals may be abuse of discretion, a *de novo* standard governs a district court's review of a magistrate's sealing decision. "[T]he decision to grant or deny access is 'left to the sound discretion of the trial court,'" and "trial court" means the district court, not a Magistrate, even where the Magistrate has the initial power to seal. *In re Application and Affidavit for a Search Warrant*, 923 F.2d 324, 326 n.2 (4th Cir. 1991) (quoting *Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989)).[2]

---

[2] Even if Rule 59(a)'s contrary to law standard is applied to these questions, the issues before this Court are pure questions of law. When courts review pure questions of law using a contrary to law standard, courts still conduct a *de novo* review of such legal questions. *See Osband v.*

**B.      This Court Should Reject the Magistrate's Denial of the Parties' Motion to Vacate.**

    **1.      The Parties have standing to challenge the Twitter Order.**

The Magistrate erred in relying on § 2704 (b)(1)(A), the Backup Preservation section of the SCA, to deny standing to challenge this § 2703(d) order.  The government does not address this defect, or answer the Parties' straightforward statutory analysis.  Instead, it baldly asserts that the Magistrate was correct, Opp. at 6, but provides no alternative reading or statutory construction that could allow that section to extend to the completely separate section for orders issued under §2703(d).  No backup preservation order was requested or issued here, so the statutory section relating to backup preservation simply does not apply.

Perhaps recognizing that the Magistrate erred, the government now invokes another portion of the SCA not mentioned by the Magistrate—§ 2708.  But this argument fares no better.  First, this is a motion to vacate addressed to the Court, and it seeks neither a "remedy" such as damages nor a "sanction" such as suppression of evidence.  Thus, it is outside the scope of § 2708.  Second, § 2708 simply limits the availability of "judicial remedies and sanctions for nonconstitutional violations of this chapter" to those set forth in the SCA; it says nothing about standing.  Indeed, the SCA permits an "aggrieved person" to seek relief against persons and entities who knowingly violate the SCA, 18 U.S.C. §§ 2712, 2707, and such relief includes "such preliminary and other equitable or declaratory relief as may be appropriate."  § 2707(b)(1).  Although Twitter could have an affirmative defense if it relied in good faith on a court order, § 2707(e)(1), the Parties as "aggrieved persons" clearly would have standing to challenge the

---

*Woodford*, 290 F.3d 1036, 1041 (9th Cir. 2002) (reviewing magistrate's order under the "contrary to law" standard and noting that questions of law are reviewed *de novo* under this standard); *Haines v. Ligget Group Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (same); *United States v. Curtis*, 237 F.3d 598, 607 (6th Cir. 2001) (for reviews of magistrate's orders, mixed questions of fact and law are treated as questions of law and reviewed *de novo*).  Moreover, even if an abuse of discretion test applies to the sealing order, *de novo* review is still required because the Magistrate applied the wrong standards in determining whether to unseal. *See Koon v. United States*, 518 U.S. 81, 100 (1996).

Twitter Order in a post-compliance civil action. Thus, nothing in the SCA denies the Parties standing to vacate. This motion to vacate is simply outside the scope of §2708.

The government next claims that due process and fundamental fairness do not apply here, and that targets of disclosure orders have no right to challenge government seizures of their most sensitive records—even information that can paint an intimate portrait of their lives—regardless of whether the government has met the statutory thresholds created by Congress. In doing so the government glosses over the four cases the Parties discussed in their Objections, and asserts, without any legal support, that no uncharged person should ever be allowed the basic standing to challenge a disclosure order for noncontent material. Nonsense. The Constitution guarantees a person the right to challenge disclosure of his or her records, "at a meaningful time and in a meaningful manner." Without that protection, the government would be free to ignore the statutory scheme Congress created to limit government access to private records. Finally, as the government now concedes, constitutional challenges are expressly allowed under §2708.

### 2.    The Twitter Order violates § 2703.

Section 2703(d) requires the government to meet a substantial, two-part burden to obtain a disclosure order: It must (1) provide "specific and articulable facts showing that there are reasonable grounds to believe" (2) that the records sought are "relevant and material to an ongoing criminal investigation." 18 U.S.C. § 2703(d). The government focuses on the first part of this standard, which establishes the quantum of evidence it must offer—"specific and articulable facts showing that there are reasonable grounds to believe." But it brushes aside the second part, which establishes *what* the government must show—that the records sought are "relevant and material to an ongoing criminal investigation." Opp. at 7-9. Contrary to the government's view and the Magistrate's Order, *both* parts of the § 2703(d) standard must be given effect. The Court may not disregard the express limits enacted by Congress.

As to the first part of the § 2703(d) standard, the government correctly notes that Congress drew the "specific and articulable facts" standard from the *Terry* line of cases. The Parties and the government agree that this standard requires less than probable cause but more than an "inchoate and unparticularized suspicion or hunch" of criminal activity. *Terry v. Ohio*, 392 U.S. 1, 27 (1968); *see* Obj. at 8; Opp. at 8-9. But, the Parties and the government disagree sharply on the second part of the § 2703(d) standard—*what* the government must establish. "Relevant and material" has a settled meaning, of which Congress undoubtedly was aware when it chose that phrase. *See* Obj. at 8. Information is "relevant and material" if it is "vital" or "highly relevant" to the inquiry or "helpful" or "essential" to the position of the party seeking it. *See, e.g., United States v. Valenzuela-Bernal*, 458 U.S. 858, 867-74 (1982); *United States v. Smith*, 780 F.2d 1102, 1108 (4th Cir. 1985) (en banc).

The government does not contend that its application for the Twitter Order satisfied this standard. Instead, it resists the interpretation of "relevant and material" in these (and other) cases because, it claims, they "discuss 'materiality' in contexts very different from § 2703(d)." Opp. at 9. But Congress borrowed the "specific and articulable facts" standard from a "very different" context than § 2703(d)—the "stop and frisk" context of *Terry* and its progeny—and it similarly borrowed the "relevant and material" standard from the settled interpretation of that phrase in other contexts. Those other contexts are not as "different" as the government suggests. The cases on which the Parties rely use the "relevant and material" standard to determine what a party must show to gain access to or use evidence, just as the government seeks to do here. It thus makes perfect sense that Congress adopted that phrase to define what the government must establish to gain access to information under the SCA.

The government proposes no alternative interpretation of "relevant and material." It simply pretends—and asks the Court to pretend—that the second part of the § 2703(d) standard

does not exist.  The government does cite to a case that examines the appropriate scope of grand jury and administrative subpoenas.  Opp. at 10 (citing *In re Subpoena Duces Tecum*, 228 F.3d 341, 348-49 (4th Cir. 2000)).  But neither comparison helps the government.

First, the analogy of § 2703(d) orders to grand jury subpoenas ignores critical differences.  Grand jury subpoenas are presumed to be reasonable, and the government has no burden to justify them; the burden rests on the person challenging the subpoena to show unreasonableness.  When a grand jury subpoena is challenged on relevance grounds, "the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the government seeks will produce information relevant to the general subject of the grand jury's investigation."  *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 300-01 (1991).

Congress chose a more stringent standard for disclosure orders under § 2703(d).  The burden rests on the government to justify issuance of the order through "specific and articulable facts," and it must show that the information sought is both "relevant" and "material" to the investigation.  A court may issue a disclosure order under § 2703(d) "only if" the government satisfies this two-part standard.  Section 2703(d) thus bears no resemblance to a grand jury subpoena.  *See In re Application for Pen Register*, 396 F.Supp.2d 747, 752 (S.D. Tex. 2005) ("This 'specific and articulable facts' threshold [in 2703(d)] … imposes an intermediate standard between an administrative subpoena and a probable cause warrant.").

The government's analogy to administrative subpoenas fares no better.  As the case on which the government relies explains, the Fourth Amendment requires that such a subpoena be (among other things) "limited in scope to reasonably relate to and further its purpose" and "sufficiently specific so that a lack of specificity does not render compliance unreasonably burdensome."  *In re Subpoena Duces Tecum*, 228 F.3d at 349.  In addition to these constitutional requirements, statutes authorizing administrative subpoenas can impose further burdens on the

government.  The statute at issue in *In re Subpoena Duces Tecum*, for example, requires that a subpoena "must be issued in connection with an investigation of a federal healthcare offense and is limited to the production and authentication of documents and things that may be relevant to that investigation." *Id.* at 350 (citing 18 U.S.C. § 3486(a)(1)).

The statute here requires even more than the statute in *In re Subpoena Duces Tecum*. Unlike § 3486, § 2703(d) requires the government to provide "specific and articulable facts" supporting the disclosure order, and it requires that the requested records be not only "relevant" to an ongoing criminal investigation (as in § 3486), but also "material." As the Third Circuit has noted, this is a "higher standard" than a mere relevance requirement. *In re Application of the United States*, 620 F.3d 304, 314-15 (3d Cir. 2010); *see also In re Application for Pen Register*, 396 F.Supp. 2d at 752.  The government does not even attempt to argue that it has met the statutory standard.

The government laments that it will have difficulty obtaining records under § 2703(d) if courts apply the statute by its plain terms.  Opp. at 9-10.  But that is the result of the balance Congress struck.  On one hand, Congress recognized that the government might need records of the kind at issue here.  On the other hand, Congress was keenly aware of the invasion of privacy such disclosures entail.  *See, e.g., In re Application*, 620 F.3d at 313 (discussing legislative history).  It balanced those competing interests through the two part "specific and articulable facts"/"relevant and material" standard.  *In re Application for Pen Register*, 396 F.Supp.2d at 752 n.7 ("Congress tightened the standard [in 1994], citing privacy concerns about the increasing amount of on-line transactional data compiled by service providers....The heightened standard was designed 'to guard against "fishing expeditions" by law enforcement.'") (internal citation omitted).

The courts, of course, must accept the balance that Congress struck.  Because the

government (as it tacitly concedes) has not made the showing here that Congress requires, the Parties' privacy interests prevail, and the Twitter order must be quashed.

>        **3.        This Court should vacate the Order and avoid the Constitutional questions.**

In its effort to counter the Parties' constitutional avoidance argument, the government attacks *In re Application of the United States*, 620 F.3d 304 (3d Cir. 2010), for assertedly ignoring the phrase "shall issue" in § 2703(d). Opp. 11. The government made precisely the same argument before the Third Circuit, and that court correctly rejected it. *See* 620 F.3d at 316. The court of appeals refused to read the word "shall" in isolation, as the government does here, and concluded instead that the statutory phrases "may be issued" and "shall . . . only if" vest a court with discretion to require a greater showing than the "specific and articulable facts"/"relevant and material" standard requires. *See id.* at 315. Rejecting the government's effort to read "only" out of § 2703(d), the court declared (in terms equally applicable here) that "[t]he difficulty with the Government's argument is that the statute does contain the word 'only' and neither we nor the Government is free to rewrite it." *Id.* at 316.

As a fallback position, the government argues that the Parties' constitutional arguments are not strong enough to trigger the doctrine of constitutional avoidance. Opp. 12. That is wrong. Those arguments—set out below and in the Parties' Objections at 10-17—are not merely sufficient to cause the Court to exercise its discretion to require a showing of probable cause; those demonstrated constitutional flaws in the Twitter Order provide independent grounds to vacate the Order.

**C.      The Twitter Order Violates the Parties' First Amendment Rights.**

At core, the government claims the Twitter Order, and the Magistrate's Decision, present no First Amendment problems because the Parties "have already made their Twitter posts and associations publicly available." Opp. at 12 (quoting Obj. at 9). This ignores the Parties' arguments and is simply wrong.

As the Parties explained, none of the information sought by the Twitter Order is publicly available—it is all private. *See* Obj. at 10-11. Indeed, if all the government wanted was public Twitter postings, it would never have sought a § 2703 order in the first place. The Twitter Order requires Twitter to disclose: (1) personal contact information, including addresses; (2) financial data, including credit card or bank account numbers; (3) account activity information, including the "date, time, length, and method of connections" and the "source and destination Internet Protocol address(es);" and (4) DM information, including the email addresses and IP addresses of everyone with whom the Parties have had DMs. *See* Obj. at 3. The disclosure demand goes well beyond "routine" disclosure of information such as phone numbers dialed or public sign-in sheets. Rather, it seeks information and data that the Parties do not share with the world and enables the mapping of movements and associations. Merely giving information to a third party does not strip it of constitutional protection. If it did, the state would have prevailed in its quest to demand the NAACP's membership lists in *NAACP v. Alabama*, 357 U.S. 449, 460 (1958).

Moreover, the government's argument misses the point. The Parties apparently are subjects of government surveillance because of their public speech about WikiLeaks and their purported association with WikiLeaks founder Julian Assange.[3] In other words, the government focused on them as a result of their exercise of First Amendment rights and is seeking to rein in, punish, or silence speech and/or association it may find embarrassing, inconvenient or distasteful. The Twitter Order therefore implicates First Amendment freedoms because (1) it is targeted at the Parties' protected speech activities, and (2) it chills speech and association rights because the Parties, and other Twitter users, now may limit the exercise of their First Amendment rights for fear of being swept up into an overly broad government net.

Because this investigation "intrudes into the area of constitutionally protected rights of

---

[3] Because the government refuses to provide the Parties with its § 2703(d) Application, they

speech, press, association and petition," the government must "convincingly show a substantial relation between the information sought and a subject of overriding and compelling state interest." *Gibson v. Fla. Legislative Invest. Comm.*, 372 U.S. 539, 546 (1963); *see also* Obj. at 11 and cases cited therein.  But even if this matter is analyzed under the case-by-case balancing test the government urges, neither it nor the Magistrate's Order has shown that the government's "need for the documents" outweighs "the possible constitutional infringement." *In re: Grand Jury 87-3*, 955 F.2d 229, 234 (4th Cir. 1992).  The Fourth Circuit has cautioned that "we are not prepared to rubberstamp every subpoena of business records of a commercial enterprise that distributes material in a presumptively protected medium." *Id.*  Indeed, "[s]uch an unchecked subpoena power would allow any prosecutor to target the affairs of a business with whose expressive activities the prosecutor disagrees or when that prosecutor senses the prospect of political profit in so targeting." *Id.*; *see also In re Grand Jury Subpoena: SDT*, 829 F.2d 1291 (4th Cir. 1987) (reversing district court and quashing a subpoena seeking corporate records related to distribution of possibly obscene films).  The "critical inquiry" for a district court considering a disclosure request that implicates First Amendment rights "is whether there is too much indefiniteness or breadth in the things required to be produced." *Id.* at 1298.

Here, the Order is clearly overbroad, as it seeks information about all of the Parties' communications on Twitter, regardless of any connection to the government's investigation.  In so doing, it threatens the Parties' and the public's right to associate without fear of being targeted by the government and the right to speak up without fearing retribution.

The government responds to these concerns with platitudes—stating that "it is difficult to imagine a more 'overriding and compelling' state interest than the prompt collection of relevant evidence in the investigation of serious crimes." Opp. at 15.  But such bald statements do not

---

cannot respond directly to the government's stated basis for the search.

justify the breadth of the disclosure demand here.  If such generalities were sufficient, then there would be no limit to the government's power to snoop.  Agents could raid any non-profit advocacy group's meeting, demand records of any business, and seize email of any Senator simply by stating that its "overriding and compelling" interest in investigating some "serious crime" trumps the subject's core Constitutional rights.  In our system, more is required.  No matter how "serious" the alleged crime may be when Constitutional rights are at stake, the government must show that the information it seeks is related to the alleged criminality—and that the net it casts is not so broad that it erodes our freedoms.

The Court should examine the government's Application with special sensitivity to the First Amendment concerns it raises and vacate the overbroad Twitter Order.

**D.     The Twitter Order Violates the Parties' Fourth Amendment Rights.**

The government insists that the Twitter Order does not implicate the Fourth Amendment because the Parties have no reasonable expectation of privacy in the IP addresses they used at particular dates and times when logging into their Twitter accounts.  The government supports this argument in two related ways:  (1) It contends that "IP addresses are analogous to telephone numbers" and (2) that persons logging into Twitter "voluntarily disclose" their IP addresses. Opp. 16.

In both respects the government ignores the facts.  First, the IP address information sought reveals far more about the subscriber than a telephone number does.  As the amicus brief of the computer network experts explains:

> IP addresses do not identify a unique device the way a telephone number
> identifies a unique telephone.  Instead, IP Addresses identify the network that
> serves as the focal point from which a network-enabled device . . . accesses the
> internet.  When a portable device moves from an Internet connection on one
> network (the network connection in one's home, for example) to an Internet
> connection on another network (a local coffee shop), the IP Address associated
> with the portable device will change.  A large collection of data over a lengthy
> period of time that includes IP Addresses, dates and times--as one might get from

a heavily trafficked website such as Twitter—can readily translate into a picture
of a person's movements from one location to another.

Brief of Amici Curiae in Support of Objections at 4 (Doc. 49, filed March 31, 2011) ["Bellovin

Amicus"]. The Bellovin Amicus expands on this point:

> Because an IP Address is associated with the network through which a portable
> device accesses the Internet, it is completely unlike a telephone number. A
> telephone number is either associated with a static address with respect to a land
> line or with a unique, portable device in the case of a cell phone. A land line
> telephone number cannot translate into tracking an owner from location to
> location because it does not move. A cell phone telephone number does not
> translate into the location and movement of its owner because the cell phone
> could be anywhere at the time of a call.

*Id.* at 9-10.

Because the IP Address information and other information covered by the Twitter Order

would permit the government to create a detailed picture of the Parties' movements (and, to

some extent, their associations, *see id.* at 9), it amounts to the kind of pervasive tracking

information in which courts have recognized a reasonable expectation of privacy, at least where

the information could not have been obtained through visual surveillance. *See, e.g., United

States v. Karo*, 468 U.S. 705, 715-17 (1984); *United States v. Maynard*, 615 F.3d 544, 555-66

(D.C. Cir. 2010).

The government's contention that Twitter users "voluntarily disclose" their IP addresses,

and thus forfeit any expectation of privacy, ignores the reality of modern computer use. As the

Third Circuit observed in the analogous context of cell site location information, a Twitter user

"has not 'voluntarily' shared his [IP address and the location information it provides] with [an

internet service provider] in any meaningful way." *In re Application of the United States*, 620

F.3d at 317. To the contrary, as the Parties demonstrated in their opening brief, Obj. at 16-17,

consumers likely have little idea of the information they reveal merely by logging into Twitter or

similar services. The amicus brief of the online privacy researchers underscores this point. It

observes that, according to research, "consumers rarely read and even more rarely understand

privacy policies" of the kind Twitter uses. Brief of Online Privacy Researchers, Pro Se, as

Amici Curiae in Support of Petitioners' Motion of Objection ["Caine Amicus"]. Dkt. 47-1 at 1.

Citing extensive studies, the Caine Amicus demonstrates that a Twitter user's "clickwrap"

acceptance of the terms of service and incorporated "privacy policy" (where the IP address

disclosure notification actually appears) rarely, if ever, represents a truly voluntary disclosure of

IP address information. The Caine Amicus concludes—correctly—that "it makes little sense to

allow obscure boilerplate agreements to determine the existence of a reasonable expectation of

privacy under the Fourth Amendment." *Id.* at 7.

**E.     The Magistrate Erred in Keeping the Documents Sealed.**

    **1.     The government has not met its heavy burden.**

    The government has the burden to show that its interests in secrecy "heavily outweigh"

the Parties' and the public's significant interests in unsealing the applications and § 2703 orders

to companies other than Twitter. *See Va. Dep't of State Police*, 386 F.3d at 575. The

government's continued reliance on generic interests in investigative secrecy is not sufficient to

meet its burden, and it fails to provide any reason to seal the other § 2703 orders.

    **a.     The Magistrate's Order applied the wrong legal standards and
ignored the immense interests in unsealing.**

    The Magistrate's Order incorrectly focused on whether any governmental interests

"outweigh" or "overcome" the interests of the Parties and the public, Magistrate's Order at 18,

rather than whether those interests "heavily outweigh" the interests in unsealing. *See* Obj. at 18-

20.[4] The government acknowledges that the Magistrate did not apply the correct standard, but

argues that the error was harmless. Opp. at 25-26. Not so. Sealing does not turn on a straight

balancing test. Because of the strong presumption in favor of access, the scales start off tipped in

favor of access. *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). To overcome

---

[4] The Magistrate also applied the wrong legal standard with respect to the First Amendment right

this presumption, and tip the scales in the government's favor, the government's secrecy interests must not just "outweigh" the interests in access, they must "heavily outweigh" them.

Had the correct standard been applied, the Magistrate's Order would have been compelled to conclude that continued sealing is inappropriate. Because it applied a straight balancing test, it erroneously ignored the details of the interests in unsealing. *See* Obj. at 22-25.

The Parties have a substantial interest in access to prevent infringement of their constitutional rights. The public also has immense interests in unsealing. The sealed documents concern a matter of national importance—the ongoing debate about the WikiLeaks' publications—and unsealing them would contribute greatly to the public's ability to participate meaningfully in and evaluate this ongoing debate. It would also enable the public to better participate in ongoing discussions about how to update surveillance laws in the digital age.

The government generally acknowledges that the Parties and the public have interests in unsealing, but does not explain how its interests heavily outweigh any of these specific interests. *See* Opp. at 28-29. The simple fact is that they do not. The government has not met its burden.

b.     **The government's generic interests in secrecy do not justify sealing.**

Judicial records may not be kept secret absent specific reasons for sealing particular documents. *Va. Dep't of State Police*, 386 F.3d at 578 (holding that a generalized interest in "protecting the integrity of an ongoing law enforcement investigation" cannot justify sealing judicial documents); *Baltimore Sun*, 886 F.2d at 64-66; *In re Wash. Post Co.*, 807 F.2d 383, 391-92 (4th Cir. 1986). That is especially true here, because the government has already unsealed the Twitter Order, undermining the general, traditional rationales for secrecy.

The government also ignores the fact that the sealed documents are not investigative records, they are *judicial* records because the government used them to obtain the Court's

---

of access. *See* Obj. at 18-19. The government does not address this argument.

assistance. *See, e.g., In re Boston Herald, Inc.,* 321 F.3d 174, 198 (1st Cir. 2003) ("the presumption is at its strongest when the document in question…has been submitted as a basis for judicial decision making") (internal quotation marks and alteration omitted). The government must therefore show that specific, actual harm—such as tipping off witnesses or destruction of evidence—will result from disclosure. *Va. Dep't of State Police,* 386 F.3d at 579; *Baltimore Sun,* 886 F.2d at 64-66; *In re Wash. Post Co.,* 807 F.2d at 391-92. Neither harm to the government's legal case nor a preference for secrecy is enough to justify sealing. Indeed, even a desire to protect a witness's privacy is not sufficient to seal a document in a criminal case. As the Seventh Circuit explained, only certain factors can justify sealing materials: "Statutes, yes; privileges, yes; trade secrets, yes; risk that disclosure would lead to retaliation against an informant, yes; a witness's or litigant's preference for secrecy, no." *United States v. Foster,* 564 F.3d 852, 854 (7th Cir. 2009).

Especially against this backdrop, the government fails to meet its burden to demonstrate specific harm. None of the factors warranting sealing are present here. Obj. at 26-27. Nor does the government discuss any specific harms unsealing here would cause. Instead, it muses about the potential problems from unsealing a hypothetical § 2703 application. Opp. at 27-28. The government's failure to specify any specific harms from disclosing these documents dooms its argument. Moreover, the Magistrate's Order does not identify any specific harms, other than that unsealing would reveal the identities of targets and witnesses of the investigation. To the extent individuals other than those already identified in the Twitter Order would be revealed, the solution is to redact those names, not to seal the documents altogether.

Contrary to the government's suggestion, the caselaw in this Circuit is not to the contrary, even in pre-indictment or ongoing investigation proceedings. *See, e.g., Va. Dep't of State Police,* 386 F.3d at 575, 579-80 (holding that there is a presumption of access to "all judicial records and

documents" and affirming the unsealing of documents related to an ongoing investigation); *Baltimore Sun*, 886 F.2d at 66 (holding that there is a right of access to pre-indictment search warrant affidavits and vacating their sealing).

The government essentially asserts that these judicial records can be kept secret until trial. That is not how our system works. Because of the impact that preliminary proceedings have on a person's rights, even the *public* has a right of access to pretrial documents and hearings in criminal cases. *See, e.g., Press-Enterprise Co. v. Super. Ct. of Cal.*, 478 U.S. 1, 10-13 (1986) (*Press-Enterprise II*) (right of access to preliminary hearings); *Baltimore Sun*, 886 F.2d at 63-66 (search warrant affidavits); *United States v. Chagra*, 701 F.2d 354, 363-64 (5th Cir. 1983) (bail reduction hearings); *United States v. Criden*, 675 F.2d 550, 555 (3d Cir. 1982) (suppression hearings). By the government's logic, a court could hold a preliminary hearing that excludes not only the public, but the defendant himself. That would violate our judicial tradition, which abhors secret proceedings and trials. *See Press-Enterprise II*, 478 U.S. 1; *Bell v. Jarvis*, 236 F.3d 149, 165 (4th Cir. 2000).

Despite this caselaw and tradition, the government seeks to justify secrecy here as a routine practice allowed whenever an investigation is ongoing.[5] That ignores the admonition that, "[r]egardless of whether the right of access arises from the First Amendment or the common law, it 'may be abrogated only in unusual circumstances.'" *Va. Dep't of State Police*, 386 F.3d at 576 (citation omitted). Moreover, even if the government routinely obtains sealed §2703(d) orders and applications, that does not justify a constitutional violation here. *See Arizona v. Gant*, 129 S. Ct. 1710, 1723 (2009) (rejecting decades of practice considered constitutional under prior decisions, and noting that "[t]he doctrine of *stare decisis* does not require us to approve routine constitutional violations."). That is especially true with § 2703 orders and applications, which

---

[5] The government even sought to seal the legal briefs filed in this challenge.

are typically processed in a non-adversarial proceeding and are sometimes, as here, not publicly

docketed, providing little or no opportunity to challenge their sealing. *See Press-Enterprise II*,

478 U.S. at 12-13; *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 410 (1st Cir. 1987).

Only by unsealing the other orders and applications will the Parties have an opportunity

to defend their rights and will the public have the ability "to keep a watchful eye on the workings

of public agencies."[6] *Nixon*, 435 U.S. at 598.  Because the government has not made a specific

showing of the need for secrecy, the documents should be unsealed.

        c.      **There is no reason to maintain the other § 2703 Orders under seal.**

The government does not explain why the § 2703 orders to companies other than Twitter

should remain sealed, nor does it dispute that the Magistrate's Order failed to articulate any

reason for continued secrecy.  Instead, the government simply asserts that unsealing those

judicial orders would be "preposterous" and that the Magistrate did not err in failing to articulate

why these core judicial documents should remain hidden from public view.  Opp. at 29-30.

In fact, the public's right of access is at its apex when judicial orders like the § 2703

orders here are at issue. *See, e.g., In re Sealing and Non-Disclosure of Pen/Trap/2703(d)

Orders*, 562 F. Supp. 2d 876, 891 (S.D. Tex. 2008) (rejecting permanent sealing of § 2703(d)

orders because "documents authored or generated by the court itself" are in the "top drawer of

judicial records," a drawer that is "hardly ever closed to the public"); *United States v. Rosen*, 487

F. Supp. 2d 703, 715-16 (E.D. Va. 2007) ("requiring a judge's rulings to be made in public

deters partiality and bias. . . .  In short, justice must not only be done, it must be seen to be

done").  There is no claim that these other § 2703 orders contain any of the "sensitive,"

"nonpublic," or "investigatory" information allegedly justifying the sealing of the Twitter

Application.  The Magistrate erred by failing to explain how any claimed governmental interest

---

[6] As explained in the Objections, this benefit to openness is one reason why the Court should

heavily outweighs the public's right of access to the other § 2703 orders. *Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 178, 181 (4th Cir. 1988) (courts must weigh interests "with respect to each document sealed").

That failure is especially troubling because the Twitter Order was unsealed—at the government's request—and the government and Magistrate stated that doing so was "in the best interest of the investigation." Jan. 5 Unsealing Order, Sears Decl. (Dkt. 45), Ex. 3. Given that, it is unlikely that unsealing similar orders to other companies would seriously jeopardize the same investigation. To the extent the claim is that these other orders would reveal the names of "witnesses" (order recipients), that was also the case with the Twitter Order. The government's failure to provide any explanation for continued secrecy—let alone a compelling one—demonstrates that the government has not met its burden.

The government's only response is to say that the Magistrate could not address the sealing of the other orders because even entertaining that challenge would confirm the orders' existence. Opp. at 30. That circular argument would mean that sealed dockets could never be challenged, because ruling on a motion to unseal a "secret" docket—where the existence of the matter has not officially been confirmed—would reveal the docket's existence. That is not the law. *See, e.g., Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004) (striking down secret-docket system); *United States v. Valenti*, 987 F.2d 708, 715 (11th Cir. 1993) (invalidating use of sealed criminal dockets).

The government's argument also ignores the fact that the reason the existence of these other orders is not yet confirmed is because the Clerk's Office has improperly failed to publicly docket them. Courts must publicly docket even sealed judicial records to provide the public with notice and an opportunity to seek to unseal them. *See, e.g., Stone*, 855 F.2d at 181; *In re Wash.*

---

find that there is a First Amendment right of access to these documents. *See* Obj. at 19.

*Post Co.*, 807 F.2d at 390. Public docketing is required even for time-sensitive matters such as search warrant proceedings. *Baltimore Sun*, 886 F.2d at 65. Although the Magistrate has taken the issue "under consideration," Op. at 19-20, no ruling has yet been made. Were there public docketing of other orders, the entire premise of the government's argument would fail.

### 2.    The Magistrate's Order does not explain why alternatives to sealing are not sufficient.

Courts must consider accommodating the government's interests through partial redaction, and expressly state the reasons why redactions are not sufficient if sealing is required. *Baltimore Sun*, 886 F.2d at 66; *see also Stone*, 855 F.2d at 181 (courts must state "the reasons for rejecting alternatives") (citation omitted). Thus, to the extent the other orders were sealed to protect the identity of the companies who received them, or individuals not already identified in the Twitter Order, the solution is to redact those names, not seal entire documents. The government provides no response to this argument with respect to the other § 2703 orders and focuses only on the Twitter affidavit. Opp. at 30.

Contrary to the government's contention, the Fourth Circuit's decision in *Media General Operations, Inc. v. Buchanan*, 417 F.3d 424 (4th Cir. 2005), does not provide a basis for ignoring these "more exacting" cases and eliminating the Fourth Circuit's well-established sealing requirements. Opp. at 30. In fact, *Media General* expressly cites these very cases for this same proposition – that courts "must consider alternatives" like redactions and expressly "'state . . . the reasons for rejecting alternatives to sealing.'" *Media Gen.*, 417 F.3d at 429, 431 (citing *Baltimore Sun* and *In re Knight*). Subsequent cases have continued to adhere to the strict procedural requirements set forth in this long line of Fourth Circuit authority, proving that *Media General* did not dispense with these requirements. *See, e.g., K.S. v. Ambassador Programs Inc.*, No. 1:10CV439, 2010 WL 3565481, at *2 (E.D. Va. Sept. 3, 2010); *GTSI Corp. v. Wildflower Int'l, Inc.*, No. 1:09CV123, 2009 WL 1248114, at *8-9 (E.D. Va. Apr. 30, 2009); *U.S. ex rel.*

*Permison v. Superlative Techs., Inc.*, 492 F. Supp. 2d 561, 563-64 (E.D. Va. 2007).   The

Magistrate's Order erred by not following these well-established requirements and explaining

why redactions were not possible.[7]

### III.   CONCLUSION

For these reasons, the Court should vacate the Magistrate's March 11 Order and issue a

new order (1) vacating the Twitter Order as violative of § 2703, the First Amendment, and the

Fourth Amendment and (2) granting the Parties' Motion to Unseal with respect to all remaining,

sealed documents relating to the Twitter Order and any similar § 2703 orders to entities other

than Twitter.

---

[7] The government has stated that it may unseal the documents after its investigation concludes, but even "a 'minimal delay' of access 'unduly minimizes, if it does not entirely overlook, the value of 'openness' itself, a value which is threatened whenever immediate access to ongoing proceedings is denied, whatever provision is made for later public disclosure.'" *In re Application & Affidavit for a Search Warrant*, 923 F.2d at 331 (quotation omitted); *see also Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality opinion).

552404.02

Dated: April 14, 2011

By:  /s/ Nina J. Ginsberg
Nina J. Ginsberg, VSB No. 19472
DIMUROGINSBERG, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Telephone:    703.684.4333
Facsimile:    703.548.3181
Email: nginsberg@dimuro.com

John D. Cline  (admitted *pro hac vice*)
LAW OFFICE OF JOHN D. CLINE
115 Sansome Street, Suite 1204
San Francisco, CA  94104
Telephone:    415.322.8319
Facsimile:    415.524.8265
Email: cline@johndclinelaw.com

K.C. Maxwell (admitted *pro hac vice*)
LAW OFFICE OF K.C. MAXWELL
115 Sansome Street, Suite 1204
San Francisco, CA  94104
Telephone:    415.322.8817
Facsimile:    415.888.2372
Email: kcm@kcmaxlaw.com

**Attorneys for ROP GONGGRIJP**

Dated:  April 14, 2011

By:  /s/ John W. Keker
      John W. Keker (admitted *pro hac vice*)
      Rachael E. Meny  (admitted *pro hac vice*)
      Steven P. Ragland (admitted *pro hac vice*)
      KEKER & VAN NEST LLP
      710 Sansome Street
      San Francisco, CA  94111-1704
      Telephone:     415).391.5400
      Facsimile:     415).397.7188
      Email:     jkeker@kvn.com
      Email:     rmeny@kvn.com
      Email:     sragland@kvn.com

      John K. Zwerling, VSB No. 8201
      Stuart Sears, VSB No. 71436
      ZWERLING, LEIBIG & MOSELEY, P.C.
      108 North Alfred Street
      Alexandria, VA  22314
      Telephone:     703.684.8000
      Facsimile:     703.684.9700
      Email:     JZ@Zwerling.com
      Email:     Chris@Zwerling.com
      Email:     Andrea@Zwerling.com
      Email:     Stuart@Zwerling.com

      **Attorneys for JACOB APPELBAUM**

Dated: April 14, 2011

By: /s/ Cindy A. Cohn
Cindy A. Cohn (admitted *pro hac vice*)
Lee Tien (admitted *pro hac vice*)
Kevin S. Bankston (admitted *pro hac vice*)
Marcia Hofmann (admitted *pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street
San Francisco, CA 94110
Telephone:     415.436.9333 x108
Facsimile:     415 436.9993
Email: cindy@eff.org
Email: tien@eff.org
Email: bankston@eff.org
Email: marcia@eff.org

Aden J. Fine (admitted *pro hac vice*)
Benjamin Siracusa-Hillman (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone:     212.549.2500
Facsimile:     212.549.2651
Email: afine@aclu.org
Email: bsiracusahillman@aclu.org

Rebecca K. Glenberg, VSB No. 44099
AMERICAN CIVIL LIBERTIES UNION
   OF VIRGINIA FOUNDATION, INC.
530 E. Main Street, Suite 310
Richmond, VA  23219
Telephone:     804.644.8080
Facsimile:     804.649.2733
Email: rglenberg@acluva.org

Jonathan Shapiro
GREENSPUN, SHAPIRO, DAVIS
   & LEARY, P.C.
3955 Chain Bridge Road
Second Floor
Fairfax, VA 22030
Telephone:     703.352.0100
Facsimile:     703.591.7268
Email: js@greenspunlaw.com

**Attorneys for BIRGITTA JONSDOTTIR**

## CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of April, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

Tracy D. McCormick
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA  22314
Telephone: 703-299-3175
Email: tracy.mccormick@usdoj.gov

John K. Zwerling, VSB No. 8201
Stuart Sears, VSB No. 71436
ZWERLING, LEIBIG & MOSELEY, P.C.
108 North Alfred Street
Alexandria, VA  22314
Telephone: (703) 684-8000
Facsimile: (703) 684-9700
Email: JZ@Zwerling.com
Email: Chris@Zwerling.com
Email: Andrea@Zwerling.com
Email: Stuart@Zwerling.com

Rebecca K. Glenberg, VSB No. 44099
AMERICAN CIVIL LIBERTIES UNION
      OF VIRGINIA FOUNDATION, INC.
530 E. Main Street, Suite 310
Richmond, Virginia 23219
Telephone: (804) 644-8080
Facsimile:  (804) 649-2733
Email:  rglenberg@acluva.org

Jonathan Shapiro
GREENSPUN, SHAPIRO, DAVIS
      & LEARY, P.C.
3955 Chain Bridge Road
Second Floor
Fairfax, VA 22030
Telephone: (703) 352-0100
Facsimile: (703) 591-7268
Email: js@greenspunlaw.com

John K. Roche
Perkins Coie, LLP
700 13th Street, N.W., Suite 600
Washington, DC  20005
Telephone: 202-654-6200
Facsimile: 202-654-6211
Email: jroche@perkinscoie.com

Marvin David Miller
1203 Duke Street
The Gorham House
Alexandria, VA 22314
(703) 548-5000
katherine@marvinmilleratlaw.com

Andrew Peterson
US Attorney's Office (Alexandria)
2100 Jamieson Avenue
Alexandria, VA 22314
703-299-3700
andy.peterson@usdoj.gov

By:  /s/ Nina J. Ginsberg
Nina J. Ginsberg, VSB No. 19472
DIMUROGINSBERG, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Phone: 703-684-4333
Fax: 703-548-3181
Email:  nginsberg@dimuro.com