UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN THE MATTER OF THE )<br>§2703(d) ORDER RELATING TO )<br>TWITTER ACCOUNTS: )<br>WIKILEAKS; ROP_G; IOERROR; )<br>AND BIRGITTAJ ) | No. 1:11EC3 (Judge Buchanan) |

**GOVERNMENT'S RESPONSE TO OBJECTIONS OF REAL PARTIES IN INTEREST TO MAGISTRATE JUDGE BUCHANAN'S MAY 4, 2011 ORDER ON PUBLIC DOCKETING**

The United States of America, by Neil H. MacBride, United States Attorney for the Eastern District of Virginia, hereby responds to the Objections of the Real Parties in Interest (the "subscribers") regarding Magistrate Judge Buchanan's May 4, 2011 Order on the public docketing of judicial records in § 2703(d) matters. Relying principally on the public's common law presumption of access to court records, the subscribers assert an unprecedented right to obtain an itemized public docket specifically identifying each document filed in any section 2703(d) matter in an ongoing criminal investigation – including matters that this Court has already ordered sealed. As demonstrated below, Judge Buchanan's Order, and the docket maintained in this matter by the Clerk of Court, provide the public with sufficient notice regarding any ongoing sealed proceedings or records.[1]

---

[1] The subscribers' objections presupposes that a right of access to the underlying documents exist. That issue is already before the Court, and fully briefed by the Parties. To the extent the Court finds that no public right of access to orders issued pursuant to 18 U.S.C. § 2703(d) exists, there is no basis for this request for public docketing.

I.      **BACKGROUND**

    A.      **Procedural History**

Most of the facts regarding this matter are described in the prior briefing by the Parties. This brief contains only the essential facts related to the issue of public docketing.

On December 14, 2010, Judge Buchanan issued an Order pursuant to 18 U.S.C. § 2703(d) directing Twitter, Inc. ("Twitter"), to disclose certain non-content records that were relevant and material to an ongoing criminal investigation (the "December 14, 2010 Order"). The December 14, 2010 Order directed Twitter to disclose records related to the subscribers' Twitter accounts. The December 14, 2010 Order was assigned miscellaneous number 10-GJ-3793 by the United States Attorney's Office. Judge Buchanan sealed the Order and accompanying application until further order of the Court.

On January 5, 2011, the Court unsealed the December 14, 2010 Order and authorized Twitter to disclose it to the Twitter customers whose records were subject to the Order. After the Order was unsealed, it was released by unknown persons to the media.

On January 26, 2011, the subscribers moved to vacate the December 14, 2010 Order, and to unseal "(1) all orders and documents filed in this matter [prior to the issuance of the December 14, 2010 Order]; (2) all orders and documents filed in this matter after issuance of the [December 14, 2010 Order]; (3) all similar judicial orders requiring entities other than Twitter to provide information concerning [the subscribers]; and (4) all documents filed in connection with such orders or requests for such orders." Mot. of Real Parties in Interest For Unsealing of Sealed Court Records ("Mot. for Unsealing") at 1. The challenges were assigned number 1:11-dm-0003 by the Clerk's office. A "dm" number is a type of miscellaneous number used by the Clerk's

2

office for matters that are neither criminal nor civil cases but require some type of resolution through the judicial system. *See District Clerk's Manual*, § 4.03(a)(1) (2010).[2] Litigation ensued.

On March 11, 2011, Judge Buchanan denied the subscribers' motion to vacate. On May 4, 2011, Judge Buchanan ordered (the "May 4, 2011 Order") that "case 10-gj-3793" was transferred to case 1:11-ec-003. Objections of Real Parties in Interest to Magistrate's May 4, 2011 Order on Public Docketing ("Subscribers' Obj.") Att. A. An "ec" case number is a new designation used by the Clerk's office for pen registers and orders issued pursuant to 18 U.S.C. § 2703(d). *See infra*.

On May 19, 2011, the subscribers filed their objections to the May 4, 2011 Order. In their objections, the subscribers request public docketing, including the name and date, of all "previously requested judicial records" issued pursuant to § 2703(d). Subscribers' Obj. at 7.

On June 1, 2011, Judge Buchanan issued an additional Order and Memorandum opinion, specifically denying the subscribers' request for an itemized docket.

**B.     Terminology**

In an attempt to dispel any confusion that surrounds the dockets and pleadings filed in this matter, this section explains the government's understanding of the various terms and numbers used to date.

---

[2]The descriptions and definitions of the Clerk's office's case numbering system are based on materials available from the Administrative Office of the United States Courts, discussions with the Clerk's office, and the experience of the United States Attorney's Office. To the extent the government's understanding is incomplete or incorrect, the Court may take judicial notice of its own records. *See Fletcher v. United States*, 174 F.2d 373, 376 (4th Cir. 1949).

1. "Cases"

The Clerk's office manages three types of "cases." *See District Clerk's Manual* § 4.03. These are civil, criminal, and magistrate judge cases, designated "cv," "cr," and "mj" respectively. *Id.* "Mj" numbers are used for proceedings before a magistrate judge which have not yet become a criminal case. *See id.*

The Clerk's office also tracks some other ancillary and supplementary proceedings that do not fall within the three categories above. *Id.* § 4.03(a)(1). Such proceedings are assigned "miscellaneous numbers," and these matters are not considered "cases." *Id.* ("Miscellaneous numbers are assigned to a variety of matters filed with the court which are not properly considered civil or criminal cases."). Miscellaneous numbers are assigned to actions concerning "administrative matters that require resolution through the judicial system." *Id.* The *District Clerk's Manual* identifies numerous proceedings that may be assigned miscellaneous numbers, such as pen registers, wire interceptions, and grand jury matters. *Id.*

2. "DM" Numbers

A "DM" number is assigned by the Clerk's office in the Eastern District of Virginia to miscellaneous matters. Courts around the country use different numbering systems for miscellaneous matters, including "mc," "ms," and others. *See* Tim Reagan and George Cort, *Sealed Cases in the Federal Courts* ("*Sealed Cases*") 23 (Federal Judicial Center 2009). However, only the Eastern District of Virginia uses "dm" numbers. *Id.* (noting that only one district uses "dm" numbers for miscellaneous matters).

3. "EC" Numbers

An "EC" number is a new numbering system used by the Clerk's office for pen registers

and orders issued pursuant to 18 U.S.C. § 2703(d). All such pen registers and § 2703(d) orders are given an "ec" number and docketed at the time of issuance. A list of all such cases is available in the Clerk's office (the "running list"). Subscribers' Obj. Att. B.[3] The "running list" also contains a list of pleadings that have been unsealed in any "ec" matter, but not an itemized list of all the sealed documents in any "ec" matter.

        4.      "GJ" Numbers

A "GJ" number is assigned by the United States Attorney's Office, not the Clerk's office. GJ numbers are used by the United States Attorney's Office to identify documents related to a grand jury investigation. "GJ" numbers are created by U.S. Attorney's Office staff, and are used to ensure that subpoenas and other documents related to various investigations are appropriately handled and filed. An investigation assigned a "gj" number may become a criminal case, or it may not.

**II.    THE MAGISTRATE JUDGE'S ORDER IS NOT CONTRARY TO LAW, SINCE NO LAW REQUIRES THAT THE CLERK MAINTAIN A PUBLIC DOCKET THAT ITEMIZES AND IDENTIFIES EACH SEALED DOCUMENT FILED IN A SEALED SECTION 2703(d) PROCEEDING.**

The subscribers argue that the common law presumption of access to judicial records requires the court create a public docket of any other sealed proceedings related to the issuance of orders pursuant to 18 U.S.C. § 2703(d). However, a large amount of confusion exists as to what dockets and documents are at issue in the subscribers' objections. At various points in the

---

[3]The subscribers also reference the declaration of Stuart Sears, counsel for Jacob Appelbaum. An attorney is prohibited from serving as a witness in a case where the attorney also represents a party. *See United States v. Howard*, 115 F.3d 1151, 1155 (4th Cir. 1997); *see also Media Gen. Operations v. Buchanan*, 417 F.3d 424, 433 n.2 (4th Cir. 2005). In any event, the government does not contest Mr. Sears' descriptions of his interactions with the Clerk's office.

subscribers' objections the "requested records" are described differently. For instance, the subscribers state that they have requested "public docketing of each of the § 2703-related documents that has been filed in this case." Subscribers' Obj. at 1. However, in the declaration of counsel attached to their objections, Subscribers' counsel states that counsel believed the May 4, 2011 Order included a requirement that search warrants and subpoenas be docketed. Decl. of Stuart Sears ¶ 6. If true, the May 4, 2011 Order would have granted relief substantially greater than the subscribers requested, as it would have included substantially more than a request for the docketing of § 2703(d) related material. Elsewhere in their objections, the subscribers state that they are requesting public docketing of "all judicial records related to any electronic communications orders in this matter." Subscribers' Obj. at 1. It is unclear whether the category of "electronic communications orders" includes search warrants and subpoenas or is limited to orders issued under § 2703(d).

As demonstrated below, to the extent the parties request the docketing of "case" 10-gj-3793, there is no "case" 10-gj-3793 opened in the Clerk's office. Consequently, there is no 10-gj-3793 docket to unseal. The subscribers are also not entitled to a docket that indicates every filing by any party that relates to a § 2703(d) order issued as part of the government's investigation. There is no common law right of access to § 2703(d) orders. Moreover, assuming such a right does exist, the docketing of any § 2703(d) orders on the "running list" provides adequate public notice to challenge the sealing of any such orders.

### A.     The Proper Standard of Review Is "Clearly Erroneous or Contrary to Law."

Rule 59(a) of the Federal Rules of Criminal Procedure provides that objections to a magistrate judge's order of non-dispositive matters that do "not dispose of a charge or defense"

may be modified or set aside if "contrary to law or clearly erroneous." The magistrate judge's May 4 Order does not "dispose of a charge or defense;" instead, it simply orders the docketing of certain materials. The Order is therefore a non-dispositive order, falls within the scope of Rule 59(a), and is subject to review under a clearly erroneous or contrary to law standard. Fed. R. Crim. P. 59(a).

### B. There Is No Case 10-GJ-3793, So There Is No Docket to Unseal.

The subscribers state that they filed motions in case 10-gj-3793, and that they moved for the unsealing and public docketing "of all § 2703-related documents on the 10-gj-3793 docket." Subscribers' Obj. at 3. However, there is no case 10-gj-3793, and no corresponding docket maintained by the Clerk. Thus, the subscribers' request to the Court for the unsealing of the docket for case number 10-gj-3793 is misplaced. The Court cannot unseal a docket that does not exist. Nor does any law require this Court to create a docket listing documents filed according to a number assigned by the United States Attorney's Office, or to seek out matters docketed under other numbers and identify them on a docket specific to the subscribers. Thus, to the extent the subscribers' request that the Court order the creation of a docket relating to the ongoing investigation identified by 10-gj-3793, the request should be denied.

### C. There Is No Right to a Public Docket of Investigative Proceedings.

The relief requested by the subscribers is extraordinary. Mandatory public docketing of a specific investigative proceeding is "virtually unknown" in the federal court system. *See In re Sealed Case No. 99-3024*, 199 F.3d 522, 525 (D.C. Cir. 1998). Indeed, the sealing of investigatory proceedings is common. A 2009 report issued by the Federal Judicial Center found thousands of sealed matters related to investigative proceedings. *Sealed Cases*, 17-18, 21-22.

The same report indicated that only a "very small number of districts" make available redacted dockets for sealed cases.[4] Here, the subscribers' request that a docket be created of the process issued as part of an ongoing grand jury investigation should be denied.

1. <u>There is No Common Law Presumption of Access to § 2703(d) Orders.</u>

There is no common law presumption of access to § 2703(d) orders.[5] Traditionally, the common law presumption of access has not applied to investigative documents and proceedings. *See In re: Motion of Dow Jones & Co.*, 142 F.3d 496, 504 (D.C. Cir. 1998) ("Although some have identified a common law tradition of public access to criminal trials, this never extended to preindictment, pretrial proceedings involving a grand jury.").[6] The reason for this is twofold: first, there is no history of public access to pre-indictment investigations. *See Douglas Oil Co. v. Petrol Stops N.W.*, 441 U.S. 211, 218 n.9 (1979) (noting that investigative proceedings have been kept secret since at least the 17th century). This is especially true for § 2703(d) orders, which

---

[4] The same report indicates that it "recently became Judicial Conference policy to post redacted docket sheets for sealed cases . . . ." *Sealed Cases* at 2. The government has been unable to obtain the basis for that statement, as the government was informed by the Administrative Office of the United States Courts that the *Guide to Judiciary Policy* was not a public document. There is no reference to that policy in the docketing chapters of the *District Clerk's Manual*.

[5] The subscribers do not specifically state whether the right to public docketing of § 2703(d) orders they are asserting is based on the First Amendment or the common law. However, as Judge Buchanan noted, there is no First Amendment right of access to § 2703(d) proceedings, as § 2703(d) proceedings are not "historically [] open to the press and general public." *Baltimore Sun,* 886 F.2d 60, 64 (1989) (finding no first amendment right of access to search warrant affidavits).

[6] Though no court has found a common law presumption of access to pre-charge proceedings, there is a common law presumption of access to some pre-trial proceedings, such as jury *voir dire. See, e.g.*, *Press-Enterprise Co. v. Superior Court of California*, 464 U.S. 501, 508-09 (1984).

were unknown in the common law. Section 2703(d) orders have existed only since 1986, *see* Electronic Communications Privacy Act of 1986, Pub. L. No. 99-508, 100 Stat. 1848 (1986), and the subscribers cite no evidence of any history of public docketing of or access to § 2703(d) orders.[7]

Second, "'[t]here is . . . no right of access to 'documents which have traditionally been kept secret for important policy reasons.'" *Dow Jones*, 142 F.3d at 504 (quoting *Times Mirror Co. v. United States*, 873 F.2d 1210, 1219 (9th Cir. 1989)). The policy reasons for the secrecy of § 2703(d) orders are identical to the policy reasons for grand jury secrecy. *See Douglas Oil*, 441 U.S. at 219. The existence of a § 2703(d) order reveals that an investigation exists, and could identify a potential witness (the service provider), a target (the customer), or important information known to the investigation (the target account or communication service). Revealing such information could cause a target to flee or may improperly influence a witness. *See id.* Moreover, if no indictment is returned, revealing § 2703(d) orders could identify individuals who may have been suspected of criminal wrongdoing but were exonerated by the grand jury. *Id.* Indeed, § 2703(d) orders are simply another tool used to gather information as part of federal criminal investigations, which must, with few exceptions, be presented to a grand jury if charges are to be brought. U.S. CONST. amend. V.

The policy reasons for the secrecy of § 2703(d) orders also differentiate this case from *Baltimore Sun v. Goetz*, 886 F.2d 60 (1989). In *Baltimore Sun*, the Fourth Circuit held that there

---

[7]Other categories of records managed by judges are also exempt from the common law presumption, such as records related to the appointment of counsel under the Criminal Justice Act. *See In re Boston Herald, Inc.*, 321 F.3d 174, 189 (1st Cir. 2003); *United States v. Gonzalez*, 150 F.3d 1246, 1254-55 (10th Cir. 1998).

9

was a common law presumption of access to records related to search warrants.  The justifications for investigative secrecy are diminished when a search warrant is executed.  The execution of a search warrant is typically a public act, and, except in special circumstances, is known to the owner of the place to be searched and any person whose property is seized.  A search warrant must be left at the place that is searched or given to the owner of the property. *See* Fed. R. Crim. P. 41(f)(1)(C).  This is fundamentally different from a third-party subpoena for business records, the existence of which is often not known to the target and which is returned to the Court without notice to the target.  This difference is also reflected in the Federal Rules of Criminal Procedure.  The rule for investigative matters is sealing and non-disclosure.  *See* Fed. R. Crim. P. 6.  The rule for search warrants is disclosure.  *See* Fed. R. Crim. P. 41(f)(1)(D).  Morever, unlike § 2703(d) orders, the common law required, with limited exceptions, notice when a search warrant was executed. *See United States v. Beckford*, 962 F. Supp. 767, 773 (1997) (tracing common law requirement of notice back to early 1800s).

       The lack of a common law presumption of access to pre-indictment investigation records is reflected in how investigatory proceedings are docketed.  For instance, grand jury subpoenas, which are court orders, *see Brown v. United States*, 359 U.S. 41, 48 (1959), *overruled on other grounds by Harris v. United States*, 382 U.S. 162 (1965), are not publicly docketed.  *See In re Sealed Case*, 199 F.3d at 526.  Nor are other proceedings ancillary to the investigation process, such as motions to quash or to compel.  *See id.* ("It cannot be said here that the District Court abused its discretion in failing to promulgate a generic rule . . . requiring a public docket for all grand jury ancillary proceedings.").  Courts also routinely seal and do not publicly docket the issuance of wiretaps, pen registers, and other requests for records issued as part of ongoing

investigations. *See Sealed Cases* at 21-22. Moreover, much of the information at issue in this matter could be obtained via subpoena, without direct judicial oversight and without public docketing. It would be an odd result indeed to require the government effectively to forfeit the confidentiality of its investigation whenever, acting due caution, it exercises its option under § 2703(d) to obtain judicial approval for an investigative step that it could lawfully undertake without it.

      2.   There is No Statutory Right to a Public Docket of § 2703(d) Orders.

No statute or rule of procedure requires public docketing of investigative proceedings. The parties have not even alleged, let alone established, that the Court's procedures are not in accordance with the federal rules. Federal Rule of Criminal Procedure 55 describes the record keeping responsibilities of the Clerk's office in criminal cases. It states, in its entirety:

> The clerk of the district court must keep records of criminal proceedings in the form prescribed by the Director of the Administrative Office of the United States courts. The clerk must enter in the records every court order or judgment and the date of entry.

Fed. R. Crim. P. 55. The rule is silent about what orders or other information must be entered into the public docket. The Administrative Office of the United States Courts issues its guidance in the form of the *District Clerk's Manual*. But the *District Clerk's Manual* contains no specific guidance on the public docketing of § 2703(d) orders, and the practice of a significant number of federal courts is not to publicly docket investigative matters. *See Sealed Cases* at 1-2. Thus, the lack of public docketing of these investigative proceedings does not violate Rule 55.

Other rules of criminal procedure, as well as the Court's local criminal rules, demonstrate that public docketing is not required. Federal Rule of Criminal Procedure 49.1 deals with

privacy protections for criminal filings. That rule exempts from the redaction requirement "a court filing that is related to a criminal matter or investigation and that is prepared before the filing of a criminal charge or is not filed as part of any docketed criminal case." Fed. R. Crim. P. 49.1(b)(7). Local Criminal Rule 49 states that records related to a search warrant do not even need to be filed, let alone docketed, until the search warrant is returned. That may occur more than two weeks after the search warrant is issued. *See* Fed. R. Crim. P. 41(e)(2)(A)(i).

That the requested judicial records, to the extent they exist at all, were not subpoenas but were instead issued pursuant to 18 U.S.C. § 2703(d) does not make public docketing a requirement. In many respects, a § 2703(d) order is akin to a grand jury subpoena. Like a grand jury subpoena, it orders a third party to produce business records. Like a grand jury subpoena, there is a legal basis that protects a § 2703(d) order from disclosure. *See* 18 U.S.C. § 2705(b). As no common law presumption of access to § 2703(d) orders exists, the Court should decline to order the unprecedented step of creating a public docket for proceedings in an ongoing criminal investigation which are properly sealed. *See Media Gen. Operations v. Buchanan*, 417 F.3d 424, 432-33 (4th Cir. 2005) (declining to order the Clerk's office create a new docketing system for search warrants).

> D. **In the Alternative, Assuming a Right to a Public Docket Exists, the Current System for Docketing Sealed § 2703(d) Orders Provides Adequate Public Notice.**

Although no right to public docketing of § 2703(d) orders exists, the Clerk does publicly docket § 2703(d) orders in accordance with Local Criminal Rule 49. When a sealed § 2703(d) order is filed, the Clerk's office assigns that order an "ec" number. Pen registers are also assigned "ec" numbers. The list of all matters given an "ec" number by the Clerk's office is

available to the public (the "running list").[8] Thus, the existence of any sealed § 2703(d) order or pen register is made public, although details of the § 2703(d) orders or pen registers are not. As such, there is public notice that a § 2703(d) order has issued, thus allowing a challenge by any member of the public to the sealing of such order.

That the "running list" does not contain individual docket entries for each document filed does not make this notice insufficient. Subscribers seek the public docketing of "every document filed with the court." *See, e.g.*, Subscribers' Obj. at 9-10; 15-16 (citing *Baltimore Sun*, 886 F.2d at 65, *Stone,* 855 F.2d at 181, and *United States v. Soussoudis (In Re Wash. Post Co.),* 807 F.2d 383, 390 (4th Cir. 1986)). They object to the EC list on the basis that it does not, for example, "indicate essential information that must be included on the public docket, such as which documents were filed in each matter, whether the Court granted or denied any request for an order or the sealing request, or whether any motions have been filed challenging the requests or orders." *Id.* However, assuming for argument's sake that a common law presumption of access to sealed judicial records exists in § 2703(d) matters,[9] the law does not require an itemized docket in the investigative phase of a sealed case. The docketing of the "ec" number required by the May 4 Order provides all the notice to which subscribers are entitled.

"The common law presumption of access may be overcome if competing interests

---

[8]The "ec" system is nearly identical to the system described in *In re Sealing and Non-Disclosure of Pen/Trap/2703(d) Orders*, 562 F. Supp. 2d 876, 878 (S.D. Tx. 2008), a case relied on by the subscribers in previous filings.

[9] In *Baltimore Sun*, the Fourth Circuit found search warrant affidavits to be "judicial records." *Baltimore Sun,* 886 F.2d at 63-64; *compare,* 18 U.S.C. § 2518(8)(b) (providing that custody of wiretap applications and orders sealed by the judge "shall be wherever the judge directs.")

outweigh the interest in access." *Stone v. University of Maryland Medical System Corp.,* 855 F.2d 178, 180 (4th Cir. 1988). "Under the common law, the decision to grant or deny access is 'left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case.'" *Baltimore Sun,* 886 F.2d at 64 (quoting *Nixon v. Warner Communications Inc.*, 435 U.S. 589, 599 (1978)). Nevertheless, because the issuance of 2703(d) applications and orders "are necessarily closed to press and public," *Baltimore Sun*, 886 F.2d at 65, notice of the existence of the sealed proceeding may be given after the proceeding concludes by "docketing the order sealing the documents." *Id*. Thus, contrary to subscribers' assertions, (Subscribers' Obj. at 9), although the Fourth Circuit in *Baltimore Sun* recognized a *common law presumption of access to certain judicial records*, it did not require the *public docketing of each and every such judicial record*. Instead, it found that docketing of the sealing order provided sufficient notice for the press and public to object to the underlying sealed documents.

The Magistrate Judge's May 4 Order to docket the sealed 2703(d) application and order as 1:11-EC-00003, therefore, provides the public adequate notice to assert any common law right of access to § 2703(d) proceedings and orders. Once the Magistrate Judge sealed that application and order, any motions filed that would have revealed additional sealed documents would be covered by the original sealing order. *See* E.D. Va. Local Crim. R. 49(F). In other words, once the Magistrate Judge found that the common law presumption of access to the 2703(d) application and order was overcome by competing interests that outweighed the interest in access, the press and public had no right to the application, the order, or to ancillary documents,

such as motions, that would reveal the sealed 2703(d) application and order.[10] *Cf. In re Sealed Case*, 199 F.3d 522 (D.C. Cir. 2000) (mandatory public docketing of proceedings ancillary to grand jury not required by rule 6.1, which supplants common law presumption of access). No separate sealing order exists for the public or press to contest or to be docketed.[11]

The purpose of public docketing of sealed matters is to give the public notice of a sealed proceeding. That goal is vindicated when a public docket reflects the existence of a sealed matter. Local Criminal Rule 49(B) furthers this goal by requiring that a motion to seal a case be "docket[ed] in a way that reveals its nature as a motion to seal." E.D. Va. Local Crim. R. 49(B). In the context of a § 2703(d) Order, the motion to seal is part of the original application and order. Thus, the docketing on the running list, with a separate "ec" number and a title "United States v. Under Seal," complies with Local Rule 49.

Moreover, the inclusion of additional details on the docket, as subscribers demand, would reveal information that is properly sealed. A docket is a "map" of a proceeding. *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 95 (2d Cir. 2004). For instance, if the docket listed the underlying investigation that the pen register or § 2703(d) order was a part of, a subject or target of an investigation could uncover what steps the government had taken to investigate his suspected crimes. If the recipient of the order was docketed, that recipient, a witness in an ongoing criminal investigation, could be subjected to intimidation or harassment. If the subject

---

[10] In this regard, *Stone*, 855 F.2d 178, in which the court sealed an entire case without first weighing the interests with respect to each document in the record, is distinguishable.

[11] To the extent a sealed hearing is held by a district judge and it is not posted on the normal Friday criminal docket, such a hearing is publicly calendared in the "red book," which is available for inspection by members of the public in the Clerk's office.

of the investigation's name was docketed, the subject would be alerted to the existence of an investigation.[12]  In the event of a challenge to the 2703(d) order, even the title of a pleading could reveal the same information.  It would be filed under the name of the recipient of the order, and would generally refer to the records at issue.  But all such information is properly sealed.

A public docket of investigative proceedings may also reveal information properly protected by Federal Rule of Criminal Procedure 6(e).  The subscribers incorrectly state that, because the Twitter Order was not sealed pursuant to Federal Rule of Criminal Procedure 6(e), their request does not implicate grand jury information.  *See* Subscribers' Obj. at 12 n.12.  It is true that a § 2703(d) order is not automatically sealed pursuant to Rule 6(e).  However, an application for a § 2703(d) order may contain Rule 6(e) material.  In addition, the unsealing (or docketing) of a particular § 2703(d) order, or the records returned pursuant to such an order, could also reveal a matter occurring before the grand jury, such as the identity of a witness, or the nature of documents or records that had been presented to a grand jury.  *See United States v. Rosen*, 471 F. Supp. 2d 651, 655 (E.D. Va. 2007) ("Typically cited as examples of Rule 6(e) violations are disclosures that reveal the identity of grand jurors or expected witnesses, reveal witness' expected testimony or questions they would be asked, . . . [or] reveal the strategy or direction of a grand jury investigation . . . .").  The docketing of such information would also allow the public to follow a grand jury investigation as it proceeds, which would reveal the

---

[12]For the same reasons, to the extent that any § 2703(d) orders pre-date the Clerk's "ec" numbering system, the subscribers are not entitled to a list of such orders that relate to the subscribers.  If the public has a right to the docketing of § 2703(d) orders, that right does not adhere solely to the orders pertaining to the subscribers.  Indeed, because the subscribers have not specifically identified any other § 2703(d) that they seek unsealed, the only remedy to vindicate the public's right to docketing of § 2703(d) orders would be the public docketing of any § 2703(d) order ever issued in the Eastern District of Virginia.

strategy and direction of the grand jury's investigation, in real time. Such information is properly protected by Rule 6(e). *Id.*

Requiring the inclusion of additional docket entries would also create a substantial burden on the Clerk's office, with no additional public benefit. Like any other investigative process, litigation regarding § 2703(d) orders is infrequent. A typical docket entry for a § 2703(d) order (or a pen register or grand jury subpoena) would likely include only one docket entry – the entry of the order itself. The running list contains that information. To the extent additional items are filed, those items, because they relate to the original sealed order, would also be properly sealed. *See* E.D. Va. Local R. 49(E). Thus, even if an itemized docket were produced, it would provide no additional information to the public. Instead, it would simply burden the Clerk's office to create numerical lists with the entry "sealed." The running list provides that information, and no law requires any additional procedure.

In summary, any right of the public to notice regarding sealed proceedings and orders is satisfied by this Court's system for docketing § 2703(d) orders. To the extent that a member of the public has an interest in moving to unseal a § 2703(d) order, he or she can do so using the "ec" number assigned by the Clerk. Nothing more is warranted, since making available additional itemized information would eviscerate the critical protections that sealing accords.

Further, the subscribers' demand for more itemized information about other sealed matters demonstrates their overriding purpose to obtain a roadmap of the government's investigation, and to determine whether other electronic service providers have received and complied with lawful section 2703(d) orders. But the subscribers have no right to notice regarding any such developments in this confidential criminal investigation – any more than they

have a right to notice of tax records requests, wiretap orders, or other confidential investigative steps as to which this Court's approval might be obtained.  *See S.E.C. v. Jerry T. O'Brien, Inc.*, 467 U.S. 735, 750 (1984); *In re Swearingen Aviation Corp.*, 605 F.2d 125, 127 (4th Cir. 1979); *see also United States v. Clem*, 210 F.3d 373, 2000 WL 353508, at *5 (6th Cir. Mar. 31, 2000). Moreover, to the extent that information could be used to identify and influence the behavior of other witnesses, such use would be flatly improper.[13]  *See Douglas Oil*, 441 U.S. at 219 ("[I]f preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily . . . .  Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements . . . .").

---

[13] At least two of the subscribers have publicly called for other electronic service providers to oppose requests for users' information.  *See* Birgitta Jonsdottir*, "My Twitter Case and 'ThoughtCrime'*," March 16, 2011 (available at http://joyb.blogspot.com/2011/03/my-twitter-case-and-thoughtcrime.html); Rop Gonggrijp, "On the Twitter court order," January 10th, 2011 (available at http://rop.gonggri.jp/?p=448).

### III. CONCLUSION

For the reasons stated herein, the subscribers' request for an Order directing the public docketing of proceedings related to an ongoing criminal investigation should be denied, and their objections overruled. Moreover, as the pleadings already before the Court adequately describe the applicable law, the government believes no hearing on the subscribers' objections is necessary.

Respectfully submitted,

Neil H. MacBride
United States Attorney

By:     /s/
Andrew Peterson
Tracy Doherty-McCormick
John S. Davis
Assistant United States Attorneys
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
(703) 299-3700

CERTIFICATE OF SERVICE

    I HEREBY CERTIFY that a true copy of the foregoing Opposition was filed with the Clerk of the Court on June 2, 2011, and a copy of this filing was e-mailed to opposing counsel via the Court's CM/ECF system:

John K. Zwerling
Stuart Sears
Zwerling, Liebig & Moseley, P.C.
108 N. Alfred Street
Alexandria, VA 22314
JZ@Zwerling.com
Counsel for Jacob Appelbaum

Johnathan Shapiro
Greenspun, Shapiro, Davis, & Leary
3955 Chain Bridge Rd
Second Floor
Fairfax, VA 22030
Js@greenspunlaw.com
Counsel for Birgitta Jonsdottir

Nina J. Ginsberg
Dimuro Ginsberg P.C.
908 King Street, Suite 200
Alexandria, VA 22314
nginsberg@dimuro.com
Counsel for Rop Gonggrijp

Rebecca K. Glenberg
ACLU of Virginia Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, VA 23219
rglenberg@acluva.org

                                                        /s/
                                      Andrew Peterson
                                      Tracy Dohery-McCormick
                                      John S. Davis
                                      Assistant United States Attorneys
                                      2100 Jamieson Avenue
                                      Alexandria, VA 22314
                                      Phone: (703) 299-3700
                                      Fax: (703) 299-3982