UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED     ) | No. 1:11EC3 |
| STATES OF AMERICA FOR AN ORDER  ) | Hon. Liam O'Grady |
| PURSUANT TO 18 U.S.C. § 2703(d)           ) | Hearing Date: January 13, 2012 |

**GOVERNMENT'S RESPONSE IN OPPOSITION TO REAL PARTIES IN INTEREST'S MOTION FOR STAY AND INJUNCTION PENDING APPEAL**

On November 10, 2011, this Court rejected numerous objections raised by the Real Parties in Interest (movants) to a December 14, 2010 Order signed by Magistrate Judge Theresa C. Buchanan directing Twitter, Inc., to produce certain business records related to the movants ("Order"). The same issues were previously rejected by Judge Buchanan. Movants now seek a stay[1] of this Court's November 10, 2011 Order, requesting additional delay while they contest Judge Buchanan's lawful Order before the Fourth Circuit. Because the movants cannot make a "strong showing" that they will succeed on appeal or show that they will suffer irreparable harm, and because a stay will harm the grand jury's ongoing criminal investigation, the movants' Motion for Stay and Injunction Pending Appeal must be denied.

**I.    THE STANDARD FOR OBTAINING A STAY**

"A stay is not a matter of right, even if irreparable injury might otherwise result." *Nken v. Holder*, 556 U.S. 418, 129 S.Ct. 1749, 1760-61 (2009) (internal quotations and citations omitted). A stay is "an exercise of judicial discretion," and its issuance depends "upon the

---

[1] Movants state that their motion is proper under Federal Rule of *Civil* Procedure 62. But Federal Rules of Civil Procedure 1 and 82 list the proceedings in which the Federal Rules of Civil Procedure apply, and challenges to grand jury subpoenas are not among those proceedings. *Cf. United States v. Goodwyn*, 596 F.3d 233, 235 n* (4th Cir.) (Federal Rules of Civil Procedure do not apply in a criminal case), *cert. denied*, 130 S. Ct. 3530 (2010). Of course, courts have by analogy applied the standards for a preliminary injunction to a stay of a ruling on a motion to quash a grand jury subpoena, but such analogies must be understood as limited by the special nature of criminal investigations and grand jury proceedings.

circumstances of the particular case." *Id.* (citing *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)). The party seeking a stay bears the burden to show "that the circumstances justify an exercise of that discretion." *Id.* (citing *Clinton v. Jones*, 520 U.S. 681, 708 (1997)); *Landis v. North American Co.*, 299 U.S. 248, 255 (1936)). To obtain a stay, the movants must demonstrate: (1) a likelihood they will prevail on the merits; (2) irreparable injury unless the stay is granted; (3) no substantial harm to others; and (4) no harm to the public interest. *In re Federal Grand Jury Proceedings*, 975 F.2d 1488, 1492 (11th Cir. 1992). *See also Long v. Robinson*, 432 F.2d 977, 979 (4th Cir. 1970). To prevail, movants must meet all these conditions; yet they fail to meet any of them. The motion should be denied.

## II. THE MOVANTS CANNOT MAKE A STRONG SHOWING THAT THEY WILL SUCCEED ON THE MERITS BECAUSE THEIR CLAIMS FLY IN THE FACE OF SETTLED LAW

To demonstrate a likelihood of success on the merits, a party must show more than a remote chance of success. "It is not enough that the chance of success on the merits be better than negligible." *Nken*, 129 S. Ct. at 1761. Rather, movants must make a "strong showing" they will succeed. *Hilton*, 481 U.S. at 776. Movants do not attempt to make such a showing. Instead, they describe the arguments they made before this Court as "substantial," Mot. at 3, state that their concerns "echo" other legal issues that are currently being decided by appellate courts, Mot. at 4, and note their appeal will raise "significant and novel" issues, Mot. at 7. But a district court is not obligated to grant a stay every time it confronts an issue that a losing party views as novel, substantial, or significant. If it were, stays would be the rule, rather than the exception. *See Nken*, 129 S. Ct. at 1757 ("A stay is an intrusion into the ordinary processes of administration and judicial review . . . ." (internal citations and quotations omitted)); *see also Alaska Central*

*Express, Inc. v. U.S.*, 51 Fed. Cl. 227, 229 (Fed. Cl. 2001) ("An injunction pending appeal, like a stay pending appeal, is an extraordinary remedy." (internal citations and quotations omitted)); *Reading & Bates Petroleum Co. v. Musslewhite*, 14 F.3d 271, 275 (5th Cir. 1994) ("Stays pending appeal constitute extraordinary relief . . . .").

Moreover, movants' assertions that the issues they raise are novel do not render their claims supported by the law. *See Cross v. Fleet Reserve Ass'n Pension Plan*, Civil No. WDQ-05-0001, 2007 WL 7143977, at *2 (D. Md. Feb. 27, 2007). Novelty in argument is often a sign of weakness, not of strength. *See, e.g.*, *United States v. Davis*, 954 F.2d 182, 185 (4th Cir. 1992) ("This argument, though novel, is without merit."). Indeed, the "novelty" of movants' claims stems not from the application of the Fourth Amendment to new technologies, Mot. at 5, but primarily from their attempts to apply modern cases related to new technologies to routine requests for business records, an investigative technique centuries old. The fact remains that movants have little to no chance of success on appeal.

### A. Fourth Amendment Claim

The first substantial issue the movants believe will be raised by their appeal is their Fourth Amendment claim, namely, whether movants have a reasonable expectation of privacy in non-content records created and compiled by a third-party business, in the regular course of business, based on information provided by the movants. Mot. at 4. As this Court and Judge Buchanan noted, it is settled law that an individual does not have a reasonable expectation of privacy in information conveyed to a third party. *See In re Application of the United States for an Order Pursuant to 18 U.S.C. § 2703(d)*, No. 1:11 EC 3, slip op. at 25-26 (E.D. Va Nov. 10, 2011) ("Nov. 10 Opinion"); *In re 2703(d) Order*, No. 1:11 DM 3, slip op. at 11 (E.D. Va. Mar.

3

11, 2011) ("Mar. 11 Opinion").  As the Supreme Court stated more than twenty years ago, "[i]t is well-settled that when an individual reveals private information to another, he assumes the risk that his confidant will reveal that information to the authorities, and if that occurs the Fourth Amendment does not prohibit governmental use of that information." *United States v. Jacobsen*, 466 U.S. 109, 117 (1984).

Movants argue, as the Court noted, that the Fourth Circuit has not clearly addressed the treatment of IP address information under this standard or the Fourth Amendment.  That an issue has not yet been decided by the Fourth Circuit, however, is not evidence that the movants are likely to succeed on appeal.  The odds are against them – those circuits that *have* considered IP addresses under the Fourth Amendment have concluded that IP addresses are akin to telephone numbers, and that, like telephone numbers, individuals have no reasonable expectation of privacy in them.  *See United States v. Christie*, 624 F.3d 558, 574 (3d Cir. 2010) ("[N]o reasonable expectation of privacy exists in an IP address, because that information is also conveyed to and, indeed, from third parties, including ISPs."); *United States v. Perrine*, 518 F.3d 1196, 1204-05 (10th Cir. 2008) ("Every federal court to address this issue has held that subscriber information provided to an internet provider is not protected by the Fourth Amendment's privacy expectation") (collecting cases); *United States v. Forrester*, 512 F.3d 500, 510 (9th Cir. 2008) ("[E]-mail and Internet users have no expectation of privacy in . . . the IP addresses of the websites they visit because they should know that this information is provided to and used by Internet service providers for the specific purpose of directing the routing of information.").

Movants' argument is not saved by the fact that other courts are currently reviewing issues related to modern technology and the Fourth Amendment, such as cell site information and

GPS tracking. Mot. at 5. Courts around the United States are *constantly* refining Fourth Amendment law through their decisions. If the existence of other Fourth Amendment cases was sufficient to demonstrate a likelihood of success on the merits of an appeal, no stay would ever be denied. Moreover, contrary to movants' claim, Mot. at 5 n.3, it is unlikely that the Supreme Court's ruling in *United States v. Jones*, No. 10-1259 (U.S. argued Nov. 8, 2011) - which involved the warrantless attachment and use of a GPS device by law enforcement – will affect movants' appeal of an order directing a third party to produce non-content business records. Both this Court and Judge Buchanan reviewed the relevant cases in deciding the merits of movants' claims, and both this Court and Judge Buchanan found movants' claims meritless. *See* Nov. 10 Op. at 27-28, 35-36; Mar. 11 Op. at 13-14.

      B.      **First Amendment Claim**

The movants fare no better with their First Amendment argument, which, like their Fourth Amendment argument, they claim raises "substantial issues not yet resolved by the Fourth Circuit." Mot. at 7. As the Court noted, movants have not demonstrated any effect on their First Amendment rights. *See* Nov. 11 op. at 47. The Order's narrow scope extends only to non-content connection records for past communications involving the identified account holders. It does not seek prospective connection records or attempt to identify the movants' associates. It does not control or direct the content of the movants' speech, or restrain, punish or burden any speech or association in which the movants may have engaged. Thus, the Order did not chill their freedom of speech or association. *See Univ. of Pennsylvania v. E.E.O.C.*, 493 U.S. 182, 197-98 (1990) (subpoena for academic papers did not impose content-based or direct burden on university); *Branzburg v. Hayes*, 408 U.S. 665, 682, 691 (1972) (requiring reporter to comply

with subpoena "involves no restraint on what newspapers may publish, or on the type or quality of information reporters may seek to acquire," nor does it threaten "a large number or percentage of all confidential news sources").

### C. Probable Cause Standard

Movants' argument that a District or Magistrate Judge has the discretion to require probable cause before issuing an Order directing a third-party to produce non-content business records is also likely to fail on appeal. As the Court noted, the movants' claim, based primarily on a Third Circuit decision, *In re Application of the United States*, 620 F.3d 304 (3d Cir. 2010), improperly interpreted the statutory text. *See* Nov. 11 Op. at 49-52. Moreover, that opinion was compelled by binding Third Circuit precedent interpreting the phrase "only . . . if" in another context, *see In re Application*, 620 F.3d at 316, precedent that is not binding on the Fourth Circuit. In the Fourth Circuit, "shall" is interpreted as a command, *see Air Line Pilots Ass'n v. U.S. Airways Group, Inc.*, 609 F.3d 338, 342 (4th Cir. 2010), and thus the language "shall issue" in the statute requires the issuance of a § 2703(d) order when the relevant statutory standards are met. *See* Nov. 11 op. at 49-52.

### III. MOVANTS CANNOT SHOW IRREPARABLE INJURY FROM ENFORCEMENT OF THE ORDER

Movants argue that, if Twitter produces the records subject to the Order, they will suffer irreparable harm because the "confidentiality" of their personal data will be forever lost. Mot. at 7-8. As a preliminary matter, it is unlikely that the data in question – business records compiled by a third-party business, as part of the business's own record-keeping procedures, for the business's own purposes – can be considered the "movants' information." And in any event, the

data in question is clearly not "confidential." As the Supreme Court recognized in *Jacobsen*, information conveyed to a third party is not protected by the Fourth Amendment. 466 U.S. at 117. The Supreme Court has "held repeatedly that the Fourth Amendment does not prohibit the obtaining of information revealed to a third party and conveyed by him to Government authorities, even if the information is revealed on the assumption that it will be used only for a limited purpose and the confidence placed in a third party will not be betrayed." *United States v. Miller*, 425 U.S. 435, 443 (1976). This well-settled precedent is squarely on point.

At root, movants resist having data they provided to Twitter used for a purpose they do not support, namely a criminal investigation. However, fear of potential prosecution, or that evidence obtained by the government may be used against someone, is not irreparable harm. In the context of motions to return seized property pursuant to Federal Rule of Criminal Procedure 41, where a movant must also demonstrate irreparable injury, courts have found that the potential use of the (allegedly unlawfully) seized property against the owner in a criminal investigation is not irreparable harm. *See United States v. Search of Law Office, Residence, and Storage Unit of Alan Brown*, 341 F.3d 404, 415 (5th Cir. 2003); *Ramsden v. United States*, 2 F.3d 322, 326 (9th Cir. 1993) (noting that Eighth and Tenth Circuits have taken a similar position).

**IV. A STAY WILL HARM THE ONGOING CRIMINAL INVESTIGATION**

The grand jury's mission is to "inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred." *United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991). "Absent a compelling reason, a court may not interfere with the grand jury process." *In re Grand Jury Proceedings #5*, 401 F.3d 247, 250 (4th Cir. 2005); *see also In re Grand Jury Subpoena*, 836 F.2d 1468, 1471 (4th Cir. 1988).

The contested Section 2703(d) Order was issued December 14, 2010. Ongoing litigation has already deprived the grand jury of the requested information for more than a year. This, in turn, has prevented the grand jury from following up on investigative leads generated from the Twitter records for more than a year. Movants state that the government's investigation will not be impeded because the grand jury investigation "can continue unabated on all other fronts" while it is deprived of the "limited sliver of information for a brief period of [additional] time"; movants have also invited the Court to shorten that period by requesting expedited review on appeal. Mot. at 9. However, even an expedited appeal will take months, not weeks, and the grand jury will be deprived of potentially significant material into the near future. The government may never know how much potential evidence has been lost or destroyed during the year the grand jury has already been waiting for these records; extending that time period can only cause further damage.

## V.    THE PUBLIC INTEREST FAVORS PROVIDING ALL EVIDENCE TO THE GRAND JURY

The public's interest is served by uninterrupted and expeditious grand jury proceedings. *United States v. Calandra*, 414 U.S. 338, 349-52 (1974). Any holding that would needlessly delay the grand jury in performing its function and impeding its investigation would frustrate the public interest in the fair and expeditious administration of the criminal laws. *United States v. Dionisio*, 410 U.S. 1, 17 (1973). As noted above, this litigation has already prevented the grand jury from following up on investigative leads generated from the Twitter records for more than a year, in a criminal investigation movants themselves acknowledge is of great public interest. Mot. at 9 (citing CNN and Wall Street Journal coverage). Movants fail to identify any public

interest overriding the public interest in expeditious grand jury proceedings. To the contrary, movants make only personal pleas related to their preference that their interactions with an Internet service provider not be collected. Mot. at 10. Such an argument cannot overcome the compelling public interest in the investigation and prosecution of criminal activity. *See Dionisio*, 410 U.S. at 16-17; *Branzburg*, 408 U.S. at 700 (" [T]he investigation of crime by the grand jury implements a fundamental governmental role of securing the safety of the person and property of the citizen . . . ."); *In re Grand Jury Subpoena: Subpoena Duces Tecum*, 829 F.2d 1291, 1305 (4th Cir. 1987) (issuance of process furthers public interest because it supports the grand jury's investigation and punishment of crime) (Wilkinson, J., concurring).

## VI. CONCLUSION

Movants have failed to demonstrate a likelihood of success on the merits, irreparable harm, a lack of harm to the opposing party, or a public interest in favor of a stay. As such, their request for a stay should be denied.

Respectfully submitted,

NEIL H. MACBRIDE
UNITED STATES ATTORNEY

By: _____/s/_____
Andrew Peterson
Assistant United States Attorney
Office of the United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing Opposition was filed electronically via the CM/ECF system on December 14, 2011, and a copy of this filing was e-mailed to opposing counsel by that system.

John K. Zwerling
Stuart Sears
Zwerling, Liebig & Moseley, P.C.
108 N. Alfred Street
Alexandria, VA 22314
JZ@Zwerling.com
Counsel for Jacob Appelbaum

Johnathan Shapiro
Greenspun, Shapiro, Davis, & Leary
3955 Chain Bridge Rd
Second Floor
Fairfax, VA 22030
Js@greenspunlaw.com
Counsel for Birgitta Jonsdottir

Nina J. Ginsberg
Dimuro Ginsberg P.C.
908 King Street, Suite 200
Alexandria, VA 22314
nginsberg@dimuro.com
Counsel for Rop Gonggrijp

Rebecca K. Glenberg
ACLU of Virginia Foundation, Inc.
530 E. Main Street, Suite 310
Richmond, VA 23219
rglenberg@acluva.org

_____/s/_____
Andrew Peterson
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, VA 22314
Phone: (703) 299-3700
Fax: (703) 299-3982