UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| IN RE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER PURSUANT TO 18 U.S.C. § 2703(d) | Misc. No. 10GJ3793<br>No. 1:11DM3<br>No. 1:11EC3 |

**REPLY IN SUPPORT OF MOTION OF REAL PARTIES IN INTEREST FOR STAY AND INJUNCTION PENDING APPEAL**

**TABLE OF CONTENTS**

**ARGUMENT** ..................................................................................................................................1

    I.    MOVANTS WILL PRESENT SUBSTANTIAL ISSUES ON APPEAL........................2

        A.    The Fourth Amendment Issues Are Substantial. ......................................................2

        B.    Whether The Magistrate Had Discretion To Require A Warrant Is A Substantial Issue On Appeal. .................................................................................4

        C.    The First Amendment Issues Are Substantial..........................................................5

    II.    MOVANTS WILL SUFFER IRREPARABLE HARM WITHOUT A STAY................6

    III.    THE GOVERNMENT WILL NOT BE HARMED SIGNIFICANTLY BY A STAY....8

    IV.    THE PUBLIC INTEREST FAVORS A STAY. ............................................................8

**CONCLUSION** .............................................................................................................................9

## TABLE OF AUTHORITIES

**Cases**

*Branzburg v. Hayes*,
    408 U.S. 665 (1972) .................................................................................................... 6

*California v. Hodari D.*,
    499 U.S. 621 (1991) .................................................................................................... 4

*Cavel Int'l, Inc. v. Madigan*,
    500 F.3d 544 (7th Cir. 2007) ...................................................................................... 1

*Center for International Environmental Law v. Office of the U.S. Trade Representative*,
    240 F. Supp. 2d 21 (D.D.C. 2003) .............................................................................. 7

*Eastland v. U.S. Servicemen's Fund*,
    421 U.S. 491 (1975) .................................................................................................... 8

*Gibson v. Fla. Legislative Inv. Comm.*,
    372 U.S. 539 (1963) .................................................................................................... 6

*Gutierrez de Martinez v. Lamagno*,
    515 U.S. 417 (1995) .................................................................................................... 5

*Hecht Co. v. Bowles*,
    321 U.S. 321 (1944) .................................................................................................... 5

*Hilton v. Braunskill*,
    481 U.S. 770 (1987) .................................................................................................... 2

*In re Application of the United States*,
    620 F.3d 304 (3d Cir. 2010) ....................................................................................... 4

*In re Application of the United States*,
    736 F. Supp. 2d 578 (E.D.N.Y. 2010) ........................................................................ 3

*In re Application of the United States*,
    747 F. Supp. 2d 827 (S.D. Tex. 2010) ........................................................................ 3

*In re Application of the United States*,
    No. 10-2188-SKG, 2011 U.S. Dist. LEXIS 85638 (D. Md. Aug. 3, 2011) ................ 3

*In re Application of the United States*,
    No. 10-MC-897 (NGG), 2011 U.S. Dist. LEXIS 93494 (E.D.N.Y. Aug. 22, 2011) .. 3

*Legend Night Club v. Miller*,
    637 F.3d 291 (4th Cir. 2011) ...................................................................................... 9


*MicroStrategy, Inc. v. Bus. Objects, S.A.*,
    661 F. Supp. 2d 548 (E.D. Va. 2009) ............................................................... 1, 7, 8, 9

*Miller-El v. Cockrell*,
    537 U.S. 322 (2003) .................................................................................................. 5

*Nken v. Holder*,
    556 U.S. 418, 129 S. Ct. 1749 (2009) ............................................................... 1, 2, 4

*Perlman v. United States*,
    247 U.S. 7 (1918) ...................................................................................................... 8

*Providence Journal Co. v. FBI*,
    595 F.2d 889 (1st Cir. 1979) .................................................................................... 8

*Township of Tinicum v. U.S. Department of Transportation*,
    582 F.3d 482 (3d Cir. 2009) .................................................................................... 4

*United States v. Jones*,
    No. 10-1259 (U.S. argued Nov. 8, 2011) ................................................................ 2

*United States v. Stevens*,
    559 U.S. ___, 130 S. Ct. 1577 (2010) ...................................................................... 6

*Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*,
    559 F.2d 841 (D.C. Cir. 1977) ................................................................................. 1

**Statutes**

18 U.S.C. § 2703 ............................................................................................... 3, 4, 5, 6

Movants Jacob Appelbaum, Rop Gonggrijp, and Birgitta Jonsdottir respectfully submit this reply in support of their motion for a stay of the Order entered in this action on November 10, 2011 (Dkt. No. 84) pending movants' appeal to the United States Court of Appeals for the Fourth Circuit.

## ARGUMENT

The parties agree on the four factors that govern stays pending appeal. But the government misstates the standard in a significant respect. It asserts that movants "must meet all these conditions" to obtain a stay. Government's Response in Opposition to Real Parties in Interest's Motion for Stay and Injunction Pending Appeal (Dkt. No. 92, filed Dec. 14, 2011) ("Gov't Opp."), at 2. In fact, the Court must *balance* the four factors, and thus "[t]he necessary 'level' or 'degree' of possibility of success will vary according to the court's assessment of the other [stay] factors." *Wash. Metro. Area Transit Comm'n v. Holiday Tours, Inc.*, 559 F.2d 841, 843 (D.C. Cir. 1977); *see, e.g., MicroStrategy, Inc. v. Bus. Objects, S.A.*, 661 F. Supp. 2d 548, 558 (E.D. Va. 2009); *see also, e.g., Cavel Int'l, Inc. v. Madigan*, 500 F.3d 544, 547-48 (7th Cir. 2007) (injunction granted pending appeal where appellant makes strong showing of irreparable harm, even though court of appeals "do[es] not suggest that [appellant] has a winning case or even a good case").

The government cites *Nken v. Holder*, 556 U.S. 418, 129 S. Ct. 1749 (2009), for the uncontroversial point that "'[a] stay is not a matter of right, even if irreparable injury might otherwise result.'" Gov't Opp. at 1 (quoting *Nken*, 129 S. Ct. at 1760). True enough, but *Nken* stands for other propositions that are particularly important here:

> The authority to hold an order in abeyance pending review allows an appellate court to act responsibly. A reviewing court must bring considered judgment to bear on the matter before it, but that cannot always be done quickly enough to afford relief to the party aggrieved by the order under review. The choice for a

1

> reviewing court should not be between justice on the fly or participation in what may be an idle ceremony. The ability to grant interim relief is accordingly not simply an historic procedure for preserving rights during the pendency of an appeal, but also a means of ensuring that appellate courts can responsibly fulfill their role in the judicial process.

*Nken*, 129 S. Ct. at 1757 (quotations and citations omitted). The denial of a stay here will place the Fourth Circuit in the position of dispensing "justice on the fly" or "participat[ing] in an idle ceremony." Indeed, the denial of a stay may—as a practical, if not legal, matter—moot movants' challenges to the order denying the motion to vacate and thus prevent the Fourth Circuit from reaching the merits of the important issues movants have raised.

Weighing the four factors set out in *Hilton v. Braunskill*, 481 U.S. 770 (1987), and reiterated in *Nken*, the Court should stay its November 10 Order and enjoin enforcement of Magistrate Judge Buchanan's Twitter Order pending movants' appeal to the Fourth Circuit.

I.   **MOVANTS WILL PRESENT SUBSTANTIAL ISSUES ON APPEAL.**

This is not the place, of course, to relitigate the issues the Court has decided. Movants comment briefly on the government's effort to portray those issues as insubstantial.

A.   **The Fourth Amendment Issues Are Substantial.**

The government asserts that "it is settled law that an individual does not have a reasonable expectation of privacy in information conveyed to a third party." Gov't Opp. 3. That proposition may well have been considered "settled" in certain contexts twenty (or even five or ten) years ago. But as technology has become increasingly pervasive, notions of privacy that once seemed settled for Fourth Amendment purposes are now in hot dispute, as the recent Supreme Court argument in *United States v. Jones*, No. 10-1259 (U.S. argued Nov. 8, 2011) illustrates. Participation in modern life inevitably and increasingly requires use of devices connected to the Internet and, in turn, third-party service providers, and "a jurisprudence that mechanically relies on that fact to disclaim the need for meaningful oversight of the

2

government's investigative techniques unwisely abandons the critical and continuing task of identifying the expectations of privacy our society is prepared to recognize as reasonable." *In re Application of the United States*, 736 F. Supp. 2d 578, 595-96 (E.D.N.Y. 2010).

The government (Gov't Opp. 3-4) cites cases that find no reasonable expectation of privacy in IP addresses, although it concedes that neither the Supreme Court nor the Fourth Circuit has addressed the issue. But in the analogous area of cell site location information ("CSLI")—which, like the Twitter use at issue here, involves the disclosure of otherwise private location-tracking data to a third-party service provider—a number of courts *have* found a reasonable expectation of privacy.[1] These courts have recognized that changes in technology have affected individuals' expectations of privacy and, consequently, what the Fourth Amendment requires. As one court put it in denying a government request for CSLI under 18 U.S.C. § 2703(d): "This court has previously granted such requests. However, recent months have brought to light important developments in both technology and caselaw raising serious constitutional doubts about such rulings." *In re Application of the United States*, 747 F. Supp. 2d 827, 829 (S.D. Tex. 2010), *aff'd*, Misc. No. H-11-223 (S.D. Tex. Nov. 11, 2011). That court ultimately denied the § 2703(d) request and required a warrant based on probable cause for CSLI.

The CSLI cases foreshadow a similar evolution in the expectation of privacy that society

---

[1] *See, e.g., In re Application of the United States*, No. 10-MC-897 (NGG), 2011 U.S. Dist. LEXIS 93494 (E.D.N.Y. Aug. 22, 2011) (historic cell site location information requires Fourth Amendment warrant); *In re Application of the United States*, No. 10-2188-SKG, 2011 U.S. Dist. LEXIS 85638 (D. Md. Aug. 3, 2011) (acquisition of location data through cell site information and cell phone tracking through GPS technology implicates reasonable expectation of privacy and requires warrant under the Fourth Amendment); *In re Application of the United States*, 747 F. Supp. 2d 827 (S.D. Tex. 2010) (historic cell site location information requires Fourth Amendment warrant), *aff'd*, Misc. No. H-11-223 (S.D. Tex. Nov. 11, 2011); *In re Application of the United States*, 736 F. Supp. 2d 578 (E.D.N.Y. 2010) (historic cell site location information requires Fourth Amendment warrant).

will accept as reasonable with respect to all Internet communications, including the privacy of IP addresses. The question here—a substantial one—is whether the Fourth Circuit will use this case to begin that evolution in this Circuit. The Court should grant the stay to permit the court of appeals to "bring considered judgment to bear" on that issue. *Nken*, 129 S. Ct. at 1757.

### B. Whether The Magistrate Had Discretion To Require A Warrant Is A Substantial Issue On Appeal.

The government tacitly concedes (as it must) that this Court's ruling concerning Magistrate Judge Buchanan's discretion to require a warrant based on probable cause conflicts squarely with the Third Circuit's decision in *In re Application of the United States*, 620 F.3d 304 (3d Cir. 2010). Gov't Opp. 6. That in itself should resolve the matter for these purposes; it cannot seriously be disputed that where two federal courts—here, one court of appeals and one district court—have given careful consideration to an issue and reached opposite results, the issue is substantial and one on which it is worth awaiting a second court of appeals' "considered judgment."

In any event, movants respectfully maintain that they have the better of the argument over the proper interpretation of § 2703(d). The Third Circuit's decision—holding that the phrase "shall issue only if" in § 2703(d) means that courts *may* issue, but have the discretion to *not* issue, orders under that section when the government makes the proper showing—is consistent with and indeed required by Supreme Court precedent. The case the Third Circuit followed on the meaning of "only if," *Township of Tinicum v. U.S. Department of Transportation*, 582 F.3d 482, 488 (3d Cir. 2009) ("The phrase 'only if' describes a necessary condition, not a sufficient condition."), in turn follows the Supreme Court's consistent reading of the same phrase, *see, e.g., California v. Hodari D.*, 499 U.S. 621, 628 (1991) ("'only if' . . . states a *necessary*, but not a *sufficient*, condition"); *accord Miller-El v. Cockrell*, 537 U.S. 322,

4

349 (2003). And regardless of whether the Fourth Circuit has at times interpreted "shall" as a command, Gov't Opp. 6, the Supreme Court has long recognized that Congress also often uses "shall" as a synonym for "may": "'[S]hall' and 'may' are frequently treated as synonyms and their meaning depends on context. . . . [C]ourts in virtually every English-speaking jurisdiction have held—by necessity—that *shall* means *may* in some contexts, and vice versa." *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 n.9 (1995) (internal citations and quotations omitted) (reading "shall" as "may"); *see also Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944) (same). Read in context as the Supreme Court has instructed, the "shall" in § 2703(d) —when paired with the clearly permissive phrase "only if" —must itself be permissive. It can be read in no other way without reading "only" out of the statute. Considering the Supreme Court's clear precedent on how to read the language that Congress used in § 2703(d), movants have a strong likelihood of success on this issue.

### C. The First Amendment Issues Are Substantial.

The government's First Amendment argument rests on its claim that the Twitter Order "does not . . . attempt to identify the movants' associates" and "does not . . . burden any speech or association in which the movants may have engaged." Gov't Opp. 5. That is not correct. The Order expressly calls for the production of detailed information not just about movants, but about every person movants have ever privately communicated with through Twitter's "direct messaging" function, including those individuals' email addresses and their IP addresses. Disclosing who movants choose to communicate with privately and where those individuals and movants were at the time of those private communications will chill both movants and their associates from using Twitter and other Internet tools to communicate. These First Amendment concerns are especially serious here, because the Twitter Order seeks this information about all

5

of movants' communications, not just those related to WikiLeaks. That violates the fundamental and long-established principle that government actions that implicate individuals' speech rights must be no broader than necessary. *See, e.g.*, *Branzburg v. Hayes*, 408 U.S. 665, 680-81 (1972) ("justifiable governmental goals may not be achieved by unduly broad means having an unnecessary impact on protected rights of speech, press, or association"); *Gibson v. Fla. Legislative Inv. Comm.*, 372 U.S. 539, 546 (1963) (where "an investigation . . . intrudes into the area of constitutionally protected rights of speech, press, association and petition," the government must "convincingly show a substantial relation between the information sought and a subject of overriding and compelling state interest").

First Amendment freedoms occupy a special place in our history and in the Constitution. *See, e.g.*, *United States v. Stevens*, 559 U.S. _, 130 S. Ct. 1577, 1585 (2010) ("The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs. Our Constitution forecloses any attempt to revise that judgment simply on the basis that some speech is not worth it."). The Fourth Circuit should be given an opportunity to rule on these issues before these fundamental First Amendment rights are overcome.

## II.     MOVANTS WILL SUFFER IRREPARABLE HARM WITHOUT A STAY.

The government does not dispute that, absent a stay, its position is that Twitter must comply promptly with Magistrate Judge Buchanan's § 2703(d) Order, notwithstanding movants' appeal. Nor does it dispute what movants understand from Twitter: that Twitter may have to produce the requested information in accordance with the government's direction. The government maintains, however, that disclosure of the information does not amount to irreparable harm.

The government's argument rests on the assumption that the information at issue is not "confidential" (and thus its disclosure will cause no harm).  But whether appellants have a reasonable expectation of privacy in the information (in other words, whether one reasonably believes it to be confidential) is precisely the issue to be decided in the Court of Appeals.  A stay will preserve the status quo while that Court makes its decision.  The denial of a stay will—as a practical, if not legal, matter—effectively moot the question before the Fourth Circuit has a chance to rule and thus deny movants their ability to obtain appellate review.

The circumstances here are directly analogous to *MicroStrategy, Inc. v. Business Objects, S.A.*, 661 F. Supp. 2d 548 (E.D. Va. 2009), which the government ignores.  At issue there was whether a document belonging to MicroStrategy (the "2000/2001 Competitive Recipe") retained its trade secret status—in other words, whether it was confidential.  The district court concluded that it was not a trade secret and thus dissolved an injunction that had barred a competitor (Business Objects) from possessing and using the document.  MicroStrategy sought a stay pending appeal.  The court granted the stay because it found that otherwise the company would suffer irreparable harm.  It explained:

> [E]ven though the court has determined that the 2000/2001 Competitive Recipe is no longer valuable, should the court's decision be in error and the court not stay the dissolution of the injunction, Business Objects could obtain a commercial advantage should it come into possession of the document while an appeal is pending.  Thus, any victory MicroStrategy would gain on appeal would then be a hollow victory because the original purpose of the injunction would have been defeated, and once the information in the 2000/2001 Competitive Recipe is disseminated, it cannot be retrieved and made private again.

*Id.* at 561; *see, e.g., Center for International Environmental Law v. Office of the U.S. Trade Representative*, 240 F. Supp. 2d 21, 23 (D.D.C. 2003) ("[T]he irreparable harm to [movants] lies in the fact that 'once the documents are surrendered pursuant to [this Court's] order, confidentiality will be lost for all time.  The status quo could never be restored . . . Failure to

7

grant a stay will entirely destroy appellants' rights to secure meaningful review.'") (quoting *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979)).  Here, as in *MicroStrategy*, disclosure of the information will forever destroy its privacy and deny movants meaningful appellate review.  That is even more inappropriate in these circumstances than in *MicroStrategy*, because here, constitutional rights are at stake.  *See, e.g.*, *Eastland v. U.S. Servicemen's Fund*, 421 U.S. 491, 501 & n.14 (1975) (permitting immediate challenge to subpoena to be heard because First Amendment rights were implicated and there might never be another opportunity for the party to attempt to preserve those rights); *Perlman v. United States*, 247 U.S. 7 (1918) (permitting immediate appeal where constitutional rights at stake).

### III.   THE GOVERNMENT WILL NOT BE HARMED SIGNIFICANTLY BY A STAY.

The government offers generalities about the grand jury's need for the information sought from Twitter.  Gov't Opp. 7-8.  But the fact remains that the amount of information at issue is limited, and the government does not dispute that the grand jury has ample other material to review and leads to follow.  Nor does the government point to any concrete harm that a stay will cause, like the running of a statute of limitations.

The government's worry about a lengthy additional delay is overblown, in any event. The Court of Appeals has established a greatly accelerated briefing schedule, with movants' opening brief and appendix due January 20, 2012, and the government's opposing brief due February 14.  Given this schedule, it seems likely that the Fourth Circuit will decide the matter swiftly, perhaps by the end of March.

### IV.   THE PUBLIC INTEREST FAVORS A STAY.

The government asserts the general public interest in expeditious grand jury proceedings. Gov't Opp. 9.  Such an interest exists, of course, but it is barely implicated by the narrow stay

movants seek. As noted above, the grand jury can proceed with its work for the brief interval that the stay is in place. On the other hand, the government ignores "the public interest . . . in favor of preserving the confidentiality" of movants' Twitter documents "until a final determination can be made" as to movants' claims of protection for those materials, *MicroStrategy*, 661 F. Supp. 2d at 562, and the well-established principle that "upholding constitutional rights is in the public interest," *Legend Night Club v. Miller*, 637 F.3d 291, 303 (4th Cir. 2011). This public interest will be defeated without a stay.

## CONCLUSION

For the reasons stated above and in movants' initial motion, the four *Hilton* factors weigh in favor of staying this Court's November 10 Order and enjoining enforcement of Magistrate Judge Buchanan's Twitter Order pending appeal.

Dated: December 20, 2011

By: /s/ Rebecca K. Glenberg
Rebecca K. Glenberg, VSB No. 44099
AMERICAN CIVIL LIBERTIES UNION
   OF VIRGINIA FOUNDATION, INC.
530 E. Main Street, Suite 310
Richmond, VA 23219
Telephone:   804.644.8080
Facsimile:   804.649.2733
Email: rglenberg@acluva.org

Aden J. Fine (admitted *pro hac vice*)
AMERICAN CIVIL LIBERTIES UNION
   FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
Telephone:   212.549.2500
Facsimile:   212.549.2651
Email: afine@aclu.org

Cindy A. Cohn (admitted *pro hac vice*)
Lee Tien (admitted *pro hac vice*)
Marcia Hofmann (admitted *pro hac vice*)
ELECTRONIC FRONTIER FOUNDATION
454 Shotwell Street

San Francisco, CA 94110
Telephone: 415.436.9333 x108
Facsimile: 415 436.9993
Email: cindy@eff.org
Email: tien@eff.org
Email: marcia@eff.org

**Attorneys for BIRGITTA JONSDOTTIR**

Dated: December 20, 2011        By: /s/ John K. Zwerling
                                John K. Zwerling, VSB No. 8201
                                Stuart Sears, VSB No. 71436
                                ZWERLING, LEIBIG & MOSELEY, P.C.
                                108 North Alfred Street
                                Alexandria, VA 22314
                                Telephone:    703.684.8000
                                Facsimile:    703.684.9700
                                Email: JZ@Zwerling.com
                                Email: Chris@Zwerling.com
                                Email: Andrea@Zwerling.com
                                Email: Stuart@Zwerling.com

                                John W. Keker (admitted *pro hac vice*)
                                Rachael E. Meny (admitted *pro hac vice*)
                                Steven P. Ragland (admitted *pro hac vice*)
                                KEKER & VAN NEST LLP
                                710 Sansome Street
                                San Francisco, CA 94111-1704
                                Telephone:    415.391.5400
                                Facsimile:    415.397.7188
                                Email: jkeker@kvn.com
                                Email: rmeny@kvn.com
                                Email: sragland@kvn.com

                                **Attorneys for JACOB APPELBAUM**

Dated: December 20, 2011      By: /s/ Nina J. Ginsberg_____
Nina J. Ginsberg, VSB No. 19472
DIMUROGINSBERG, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Telephone: 703.684.4333
Facsimile: 703.548.3181
Email: nginsberg@dimuro.com

John D. Cline (admitted *pro hac vice*)
LAW OFFICE OF JOHN D. CLINE
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: 415.322.8319
Facsimile: 415.524.8265
Email: cline@johndclinelaw.com

K.C. Maxwell (admitted *pro hac vice*)
LAW OFFICE OF K.C. MAXWELL
235 Montgomery Street, Suite 1070
San Francisco, CA 94104
Telephone: 415.322.8817
Facsimile: 415.888.2372
Email: kcm@kcmaxlaw.com

**Attorneys for ROP GONGGRIJP**

**CERTIFICATE OF SERVICE**

I hereby certify that on this 20th day of December, 2011, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following counsel of record:

Andrew Peterson
U.S. Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314

John K. Zwerling, VSB No. 8201
Stuart Sears, VSB No. 71436
ZWERLING, LEIBIG & MOSELEY, P.C.
108 North Alfred Street
Alexandria, VA 22314
Telephone: (703) 684-8000
Facsimile: (703) 684-9700
Email: JZ@Zwerling.com
Email: Stuart@Zwerling.com

Nina J. Ginsberg, VSB No. 19472
DIMUROGINSBERG, P.C.
908 King Street, Suite 200
Alexandria, VA 22314
Telephone: 703.684.4333
Facsimile: 703.548.3181
Email: nginsberg@dimuro.com

John K. Roche
PERKINS COIE, LLP
700 13th Street, N.W., Suite 600
Washington, DC 20005
Telephone: 202-654-6200
Facsimile: 202-654-6211
Email: jroche@perkinscoie.com

Marvin David Miller
1203 Duke Street
The Gorham House
Alexandria, VA 22314
Telephone: (703) 548-5000
Email: katherine@marvinmilleratlaw.com

I also certify that on this 20th day of December, 2011, I caused the following party to be served by first-class United States mail:

>Christopher Soghoian (*pro se*)
>Graduate Fellow, Center for Applied Cybersecurity Research
>Indiana University
>P.O. Box 2266
>Washington, DC 20013
>Telephone: 617-308-6368

>By: /s/ Rebecca K. Glenberg
>Rebecca K. Glenberg, VSB No. 44099
>AMERICAN CIVIL LIBERTIES UNION
>  OF VIRGINIA FOUNDATION, INC.
>530 E. Main Street, Suite 310
>Richmond, VA 23219
>Telephone:  804.644.8080
>Facsimile:   804.649.2733
>Email: rglenberg@acluva.org